808 F.2d 233
 1 Indiv.Empl.Rts.Cas. 1321
 FURLONG, James F.
v.
GUDKNECHT, Edward, individually and as the Recorder of Deeds
of Bucks County and County of Bucks, Edward
Gudknecht, individually and as the
Recorder of Deeds of Bucks
County, Appellant.
 No. 86-1052.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 20, 1986.
Decided Dec. 19, 1986.
 
 Thomas J. Profy, III (argued), John P. Koopman, Begley, Carlin & Mandio, Langhorne, Pa., for appellant.
 Ronald Jay Smolow (argued), Ronald Jay Smolow, P.C., Trevose, Pa., for appellee.
 Before BECKER and MANSMANN, Circuit Judges, and TEITELBAUM, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 The central issue we are asked to address in this political discharge case is whether the potential for statutory succession to an elected office by an appointed deputy with ministerial duties is sufficient to demonstrate that "party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). Holding that it was not, the district court granted a motion to enjoin preliminarily the defendant, Edward Gudknecht, the newly elected Republican Recorder of Deeds for the County of Bucks, from terminating the plaintiff, a Democrat, as Second Deputy to the Recorder of Deeds, a job he held for eight years. We find that, although the potential for succession is important in theory, political affiliation is inapposite to the duties of the elected office and the possibility of succession is so de minimis that the Branti burden of proof on the public employer has not been demonstrated. We will, therefore, affirm the district court's order.
 
 I.
 
 2
 The plaintiff, James F. Furlong, is a registered Democrat. In January of 1978, the Democratic Recorder of Deeds for the County of Bucks, Lucille Trench, appointed Furlong to serve as Second Deputy Recorder of Deeds. Trench reappointed the plaintiff for Trench's second four-year term in 1982.
 
 
 3
 In November of 1985, a Republican, defendant Edward Gudknecht, was elected Recorder of Deeds. Furlong had actively supported the defendant's opponent, Democrat Janice DeVito, throughout her campaign. On January 3, 1986, Gudknecht informed Furlong that Gudknecht would terminate him on January 6, 1986, and would appoint Lillian Strawn, a Republican, as Second Deputy Recorder.
 
 
 4
 Furlong immediately filed a complaint alleging federal and state causes of action and seeking injunctive and monetary relief. The plaintiff simultaneously moved for a temporary restraining order and for a preliminary injunction to preclude Gudknecht from firing, or failing to retain, him in office.
 
 
 5
 Following a hearing, the district judge issued a bench opinion analyzing the evidence in light of the likelihood of the plaintiff's success on the merits, the potential for irreparable injury absent temporary relief, the possibility of harm to third parties, and the public interest. See Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 919-920 (3d Cir.1974). On January 15, 1986, the district court entered an order granting Furlong's motions for a temporary restraining order and for a preliminary injunction. This appeal followed. We possess jurisdiction to review the preliminary injunction pursuant to 28 U.S.C. Sec. 1292(a)(1) (1982).
 
 II.
 
 6
 The Supreme Court has twice proscribed dismissals of public employees solely for their political affiliation. Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Branti, 445 U.S. 507, 100 S.Ct. 1287. Simultaneously, the Court has clarified that the First Amendment permits some patronage discharges.
 
 
 7
 Justice Stewart's concurrence in Elrod distilled a single issue from the plurality's opinion:
 
 
 8
 whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs. I agree with the plurality that he cannot.
 
 
 9
 Elrod 427 U.S. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring). The Court subsequently focused its holding in Branti.[1]
 
 
 10
 In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.
 
 
 11
 Branti, 445 U.S. at 518, 100 S.Ct. at 1295.
 
 
 12
 In a similar case also arising from Bucks County, Pennsylvania, Brown v. Trench, 787 F.2d 167 (3d Cir.1986), we observed that, despite Branti's focus, the opinion failed to specify particular factors tending to answer its "ultimate inquiry." Id. at 169.
 
 
 13
 After surveying several cases following Branti, however, we discerned the "key factor" to be "whether the employee has 'meaningful input into decision making concerning the nature and scope of a major ... program.' " Id. at 169-170, quoting Nekolny v. Painter, 653 F.2d 1164, 1170 (7th Cir.1981), cert. denied, 455 U.S. 1021, 102 S.Ct. 1717, 72 L.Ed.2d 139 (1982). More recently, we have chosen to construe Branti narrowly. Horn v. Kean, 796 F.2d 668 (3d Cir.1986). Mindful of these standards, we turn to the defendant's points of error.
 
 III.
 A.
 
 14
 The defendant argues that the district court erroneously found party affiliation irrelevant to the office of the Second Deputy Recorder of Deeds. On review of a district court's grant of a preliminary injunction, "[u]nless that court abuses its discretion, commits an obvious error in applying the law, or makes a serious mistake in considering the proof, the appellate court must take the judgment of the trial court as presumptively correct." Klitzman, Klitzman and Gallagher v. Krut, 744 F.2d 955, 958 (3d Cir.1984). See National Land & Investment Co. v. Specter, 428 F.2d 91, 95 (3d Cir.1970).
 
 
 15
 We have reviewed the testimony relating to the duties of the deputy recorders and we cannot label "clearly erroneous" the district court's factual view that the deputy recorders occupy purely ministerial, if not clerical, positions. Cf. Rosenthal v. Rizzo, 555 F.2d 390, 393 & nn. 3, 5 (3d Cir.), cert. denied, 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977) (noting that the question of the plaintiff's status as a policymaker vel non is one of fact). The record discloses that the deputies record documents, satisfy mortgages, and forward taxes.
 
 
 16
 Gudknecht, in fact, flatly admitted on questioning by Furlong's counsel:
 
 
 17
 MR. SMOLOW: Mr. Gudknecht, is political party affiliation of the first or second deputy important with respect to the performance of their official duties?
 
 
 18
 MR. GUDKNECHT: No, it's not.
 
 
 19
 Later, however, the following exchange occurred during Gudknecht's direct examination by his counsel:
 
 
 20
 MR. KOOPMAN: On Friday, Mr. Smolow asked you whether you felt political affiliation was an appropriate criteria [sic] for the performance of the duties of Deputy Recorder of Deeds in supervising personnel in the office. And you answered that question, how?
 
 
 21
 MR. GUDKNECHT: No, I don't think I understood the question at the time.
 
 
 22
 MR. SMOLOW: I'm going to object. First of all, your Honor, that was not the question phrased. It was not qualified with respect to supervising personnel in the office.
 
 
 23
 THE COURT: The Court recalls the question, the Court recalls the answer, the Court recalls the new answer he's giving after a weekend to think about it and talk to his attorney, however, I'll permit the question and the answer, for whatever credibility it has.
 
 
 24
 The district court found ample reason to discredit the defendant's later testimony and we will not disturb this finding.
 
 B.
 
 25
 We turn now to the crux of the legal issue before us. We agree that the possibility that the plaintiff might ascend to the defendant's elected office by virtue of Pa.Stat.Ann. tit. 16, Secs. 1305, 1312 is a factor to be considered in determining whether the Branti criteria have been met. The defendant argues that since party affiliation was important to his election as Recorder, it a fortiori follows that party affiliation is necessary for any position which could possibly ascend to the Recorder position.
 
 
 26
 While not mandatory, Sec. 1312 does give the Recorder the discretion to appoint a Second Deputy. Pa.Stat.Ann. tit. 16, Sec. 1312 (Purdon 1956) provides:
 
 
 27
 The recorder of deeds may appoint a second deputy recorder of deeds, who shall possess and discharge all the rights, powers and duties of the principal deputy recorder of deeds during his necessary or temporary absence.
 
 
 28
 Notably, though, a Recorder must name a First Deputy:
 
 
 29
 The recorder of deeds shall appoint one first deputy to act in the case of the death or resignation of his principal, or when the office shall become vacant from other causes.
 
 
 30
 Pa.Stat.Ann. tit. 16, Sec. 1305 (Purdon Supp.1986).
 
 
 31
 The possibility emerges from Secs. 1312 and 1305 that a Second Deputy might temporarily occupy the Recorder's office during the absence of both the Recorder and the First Deputy. See Pa.Stat.Ann. tit. 16, Sec. 408(a) (Purdon Supp.1986). The County Code, however, requires the Governor to select promptly a successor to the Recorder.[2]
 
 
 32
 We agree that the possibility that a Second Deputy would "possess and discharge all of the rights, powers and duties ..." of the Recorder of Deeds in the absence of the Recorder and of the First Deputy supports the importance of the Second Deputy's political affiliation. We find, however, that although a major factor, the possible succession of the Second Deputy is not outcome determinative here for several reasons.
 
 
 33
 First, the attendant duties of the Recorder of Deeds appear unaffected by the Recorder's political views. One must concede that party affiliation was essential to the Recorder's election to office. Yet politics seems inapposite to "the effective performance of the public office involved." Branti, 445 U.S. at 518, 100 S.Ct. at 1295.
 
 
 34
 The powers and duties of the Recorders are described in Pennsylvania's statutes. See generally Pa.Stat.Ann. tit. 16, Secs. 9701-9857 (Purdon 1956 & Supp.1986). In a nutshell, the Recorder is empowered to record all deeds, mortgages and conveyances and to index them in an accessible manner.
 
 
 35
 The district court described many allegedly policymaking tasks of the Recorder as "pretextual" including which microfilm system to employ, what office supplies to purchase, and whether to greet visitors at the door. Moreover, Gudknecht repeatedly denied partisan aims in his personnel and budgetary recommendations. In any event, the record indicates that the County Commissioners retain oversight responsibilities for the workings of the Registry Office and possess veto power with respect to the Recorder's budget proposals. By statute, the County Commissioners alone may contract for services and purchase property for the Registry Office and must submit to the lowest bidder all contracts over $4,000. Pa.Stat.Ann. tit. 16, Secs. 1801-1802 (Purdon 1956 & Supp.1986). Employees other than the deputy recorders, moreover, are governed by a union contract. Consequently, assuming arguendo that the Second Deputy ascended to the Recorder's position, any duties he would then be performing would not require political affiliation for their effective performance.
 
 
 36
 Second, the County Code requires the Governor to appoint a Recorder pro tempore until the electorate can fill any vacancy in the office. See supra note 2. The possibility seems remote, therefore, that a Second Deputy might even temporarily occupy the Recorder's office.
 
 
 37
 Third, the political affiliation of deputy recorders has historically played a minor role at best in the overall workings of the Registry Office. The record shows, for example, that William Liebig, a Republican, served for some thirty years as First Deputy to five Recorders of Deeds. Notably, Liebig held his position from 1978 to 1985 during the terms of Democratic Recorder Lucille Trench.
 
 
 38
 Gudknecht vigorously retorts that Stegmaier v. Trammell, 597 F.2d 1027 (5th Cir.1979), supports the position that the mere chance that Furlong might succeed him as Recorder sufficiently justifies his actions here. Stegmaier held that an elected county circuit clerk could lawfully discharge his lone deputy solely for the deputy's political affiliation, where state law both endowed deputies "with full power to transact all business of such clerks ...," Ala.Code Sec. 12-17-93 (1975), and exposed the deputy to civil liability for neglecting his statutory duties. Stegmaier, 597 F.2d at 1040.
 
 
 39
 Yet Stegmaier preceded Branti's "new test" for adjudging patronage cases. See supra note 1. Stegmaier rested on a finding that the plaintiff "occup[ied] a position of confidence, loyalty, and trust ..." under Elrod. 597 F.2d at 1030. This reasoning, though, fails to answer Branti's "ultimate inquiry" into whether membership in a particular political party is a prerequisite to the plaintiff's office.
 
 
 40
 Moreover, the court in Stegmaier emphasized the importance to its holding that the plaintiff was the defendant's sole deputy. Id. at 1040. Here, however, we have noted Furlong's status two-steps below the Recorder of Deeds. The likelihood that the plaintiff would ascend to Gudknecht's job seems too far attenuated to withstand Branti's test.
 
 
 41
 Finally, the plaintiff in Stegmaier was vested with "full power to transact all business ..." of the circuit clerk. Id. at 1037, quoting Ala.Code Sec. 12-17-93 (1975). Unlike Furlong, the plaintiff there always possessed authority commensurate with that of her elected superior. Although we agree that Furlong's potential ascension to the role of Recorder merits some weight under Branti, that possibility is insufficient per se to support Gudknecht's argument.
 
 IV.
 
 42
 Gudknecht also asserts that the First Amendment does not prohibit his refusal to reappoint Furlong. We disagree.
 
 The Supreme Court stated in Branti:
 
 43
 [R]elying on testimony that an assistant's term in office automatically expires when the public defender's term expires, petitioner argues that we should treat this case as involving a "failure to reappoint" rather than a dismissal and, as a result, should apply a less stringent standard. Petitioner argues that because respondents knew the system was a patronage system when they were hired, they did not have a reasonable expectation of being rehired when control of the office shifted to the Democratic Party. A similar waiver argument was rejected in Elrod v. Burns, 427 U.S. 347, 360, n. 13 [96 S.Ct. 2673, 2683, n. 13]; see also id., at 380 [96 S.Ct. at 2692] (Powell, J., dissenting). After Elrod, it is clear that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs.
 
 
 44
 Branti, 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6. Thus, our decision stands unaffected by whether this case presents a firing or a failure to reappoint.
 
 V.
 
 45
 We conclude that the possibility that the plaintiff might statutorily succeed to an elected office remains an important factor in adjudging patronage cases. Yet that potential cannot remove the plaintiff from the protections of Branti where political affiliation is inapposite to the duties of the elected office and where, in any event, the chance appears remote that the plaintiff might ascend thereto. The district court acted within its discretion and did not commit any errors of law in granting the plaintiff's motion for a preliminary injunction. We will affirm.
 
 
 46
 BECKER, Circuit Judge, dissenting.
 
 
 47
 The majority has held that an elected official may not consider party affiliation when making an appointment of a principal deputy in his office even though the state legislature has decided that such deputy will succeed to the office in the event of vacancy. I find this result most troubling and would so find it even were it not predicated upon the majority's explicit and quite remarkable determination that political affiliation is inapposite to the elected office itself. I find equally untenable the other ground of the majority's decision--that "political affiliation is inapposite because the possibility of succession is ... de minimis," Majority Opinion at 234.
 
 I.
 
 48
 The majority's finding that "the attendant duties of the Recorder of Deeds appear unaffected by the Recorder's political views" represents an impermissible exchange of judicial opinion for legislative determination. If politics were of no importance, the legislature would not have provided that the position was to be filled by an election. Because, however, the legislature had indeed provided that the Recorder of Deeds is to be elected, we should respect the determination that the office has political aspects. "Clearly, partisan politics lies at the very core of our democratic process." Horn v. Kean, 796 F.2d 668, 674 (3d Cir.1986) (in banc) (Aldisert, J., announcing the judgment of the court).[1]
 
 
 49
 The implication of the majority's finding in this regard is both clear and clearly wrong. The finding that the Recorder of Deeds does not hold an office sensitive to politics extends to the holder of that office the First Amendment protections to which he is not entitled under Elrod and Branti. Such construction is impermissible under our in banc decision in Horn v. Kean, where we quoted with approval Justice Powell's dissent in Branti: "[No] incumbent [may] contend seriously that the voters' decision not to re-elect him [in state-sponsored elections] because of his political views is an impermissible infringement upon his right of free speech or affiliation." Branti, 445 U.S. at 533, 100 S.Ct. at 1302 (Powell, J., dissenting), quoted in Horn v. Kean, 796 F.2d at 674. Yet this is precisely what the majority allows by the first part of its holding today.
 
 
 50
 Because the Recorder of Deeds is elected to his position, I believe there can be no question that party affiliation is important to that office and, given the statutory scheme, to this case. See Horn v. Kean, 796 F.2d at 674; see generally The Changing American Voter (N. Nie, S. Verba & J. Petrocik, 2d ed. 1979) (describing role of parties and issues in elections). The Recorder's position must therefore be considered "policymaking" for Elrod and Branti purposes. If a free election is to have any meaning in a democratic society, we must respect the political choices that are expressed by the voters. Because party affiliation is a vital ingredient in the electoral process, an elected official by definition must be considered an Elrod and Branti policymaker.
 
 
 51
 The majority does not satisfactorily answer this objection. Rather than focusing on the fact that the Recorder must stand election to assume and retain office, the majority resorts to a position that merely denigrates the significance of the Recorder's duties. Not only do I find this argument beside the point, I find it wrong in both substance and in its exaggerated tone.
 
 
 52
 Although the majority finds that the existence of ministerial duties defeats the policymaking aspects of the elected Recorder's role, the fact is that the Recorder is much more than a clerk. The elected Recorder has the responsibility for administration of a large office with some 25 employees and an annual budget of nearly three-quarters of a million dollars. He must perforce make a myriad of significant personnel decisions and budget allocation decisions. It is his responsibility to formulate policy concerning dealings with the public, a matter that Mr. Gudknecht thought to be an issue in the 1985 election campaign. See App. at 143a. Finally, the Recorder has major input into an enormously important policy decision--whether to convert the ancient system of physical recording of deeds and mortgages into a computerized operation. To describe the Recorder's duties as essentially ministerial and clerical as the majority does is an exercise in overkill. As the French say, "On affaiblit toujours tout ce qu'on exagere." La Harpe, Melanie, Act I, scene 1 ("One always weakens whatever one exaggerates."). Moreover, even if the duties of the Recorder's office were in a large part ministerial, this aspect of the job is not enough to overcome the conclusion that party affiliation is a necessary and important facet of the elected position. See Ness v. Marshall, 660 F.2d 517 (3d Cir.1981).
 
 II.
 
 53
 If no office so important as to warrant election can be considered any less than a policymaking position, then a position that may provide a successor to the elected official must similarly be considered one of policymaking. Furlong's position is sensitive to political affiliation because he can succeed to the elected office of Recorder of Deeds. The fact of succession is vital. It represents a legislative determination that the Second Deputy is of sufficient importance to the overall operation of the Recorder's Office to step into the shoes of the Recorder of Deeds. Moreover, the independent fact that in the event of succession the Second Deputy may "possess and discharge all of the rights, powers and duties" of the Recorder of Deeds makes the position one of political import. In sum, I believe that where an office holder can succeed to an elected policymaking position, the office holder should be considered a policymaker for Elrod and Branti purposes. The majority's holding turns this fundamental principle on its head. The prospect that a court can emasculate the political decision of a legislature by nullifying the effect of its characterization of an office is frightening indeed.
 
 
 54
 The majority's only retort to these arguments is essentially lip service. It professes a willingness to consider possible succession to the office of Recorder as a factor in its determination. However, it then proceeds to denigrate Furlong's presuccession duties in the same manner as it did the Recorder's. Moreover, the majority minimizes the possibility or duration of succession in an attempt to satisfy itself that the possibility of succession is no problem. This exercise is not only irrelevant; it is also unfaithful to both the record and the practical realities.
 
 
 55
 It may be that in pure probability terms, the likelihood that there will be a permanent vacancy in the offices of both the Recorder and First Deputy is not high.[2] But such events are surely not unknown, and in such a case it is quite probable that the Second Deputy will accede to the Recorder's function for as long as several years. The political infighting in Bucks County, Pennsylvania, is chronicled in numerous decisions over the past several years of this Court and the United States District Court for the Eastern District of Pennsylvania, where Bucks County is located.[3] Even assuming that a successor is nominated by the Governor, it is not uncommon in Pennsylvania for confirmation to be long delayed, particularly of nominees from counties with a strong two party system such as the County of Bucks.
 
 
 56
 Additionally, the probability of succession here cannot be considered any lower than any other instance of possible succession in any other governmental position. The majority's argument therefore sweeps too broadly, effectively discounting all succession possibilities as de minimis. Other courts of appeals, however, have not analyzed succession under such a Bayesian concept. See, e.g., Tomczak v. City of Chicago, 765 F.2d 633, 638 (7th Cir.1985) (listing as a factor in support of finding that First Deputy was a policymaker fact that "whenever the Commissioner was absent, the First Deputy would assume the Commissioner's duties"). But all that is relatively unimportant. What is important is what we have stated above--that the legislature has made the judgment that the Second Deputy Recorder is sufficiently important that he may succeed to the elected position should the need arise.[4]
 
 III.
 
 57
 Finally, the majority ignores the clear instruction of Horn v. Kean, 796 F.2d 668 (3d Cir.1986) (in banc). The majority states that in Horn we have "chosen to construe Branti narrowly." Rather we said much more--"that it is a danger for courts, other than the Supreme Court, to expand this particular [Elrod and Branti ] rule." Id. at 678 (Aldisert, J., announcing the judgment of the court).
 
 
 58
 By its decisions in Elrod and Branti, the Supreme Court has not found the entire patronage system unconstitutional. Rather, it has determined that, for many government positions, considerations of party affiliation are not of sufficient governmental interest to justify the encroachment upon protected First Amendment interests. The teaching of Horn and the clear message of the Pennsylvania legislature thus control this case and compel the conclusion that Mr. Gudknecht should have the right to discharge Mr. Furlong, for Furlong's position is highly sensitive to political affiliation.[5]
 
 
 59
 I respectfully dissent.
 
 
 
 *
 Honorable Hubert I. Teitelbaum of the United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 We have noted that Branti established a "new test" for adjudging patronage cases. See Loughney v. Hickey, 635 F.2d 1063, 1064 (3d Cir.1980) (per curiam )
 
 
 [2]
 Pa.Stat.Ann. tit. 16, Sec. 409 (Purdon Supp.1986) reads:
 In case of a vacancy, happening by death, resignation or otherwise, in any county office created by the Constitution or laws of this Commonwealth, and where no other provision is made by the Constitution, or by the provisions of this act, to fill the vacancy, it shall be the duty of the Governor to appoint a suitable person to fill such office, who shall continue therein and discharge the duties thereof until the first Monday in January following the next municipal election occurring not less than ninety days after the occurrence of the vacancy, or for the balance of the unexpired term, whichever period is shorter. If there is a municipal election occurring not less than ninety days after the occurrence of the vacancy, other than the one at which the office ordinarily is filled, then the office shall be filled at that election for the balance of the unexpired term. Such appointee shall be confirmed by the Senate if in session.
 
 
 [1]
 While Chief Judge Aldisert's opinion did not command a majority, the concurring opinions of Judges Seitz and Adams endorse the salient substantive bases of the opinion. On the points discussed in this opinion, therefore, Horn represents an in banc majority holding
 
 
 [2]
 The record reveals that temporary vacancies were quite common for both offices. Illnesses, vacations, other job responsibilities and indeed even lunch hours would require the Second Deputy to act in place of the principal policymaker. See App. at 80a-84a. Because the offices were considered vacant whenever the Recorder and First Deputy were absent, Mr. Gudknecht himself concluded that the Second Deputy ran the Recorder's office a large part of the time. See App. at 82a
 
 
 [3]
 See e.g., Brown v. Trench, 787 F.2d 167 (3d Cir.1986); Hoffman v. Fonash, No. 84-0090 (E.D.Pa. February 28, 1984); aff'd 787 F.2d 582 (3d Cir.1986); Shantz v. Fonash, No. 83-6173 (E.D.Pa. July 24, 1985); Mitman v. Glascott, 557 F.Supp. 429 (E.D.Pa.1983), aff'd, 732 F.2d 146 (3d Cir.1984)
 
 
 [4]
 The majority attempts to distinguish the Fifth Circuit's holding in Stegmaier v. Trammell, 597 F.2d 1027 (5th Cir.1979), which found succession of vital importance. The attempt fails. The first point, that Stegmaier preceded Branti, does not lessen the force of that case's reasoning. Its second point, that the possibility of succession is de minimis, is too broad, see supra. That point is similarly inapposite because it ignores the fact of a legislative determination, which I find conclusive
 
 
 [5]
 While not a basis for my dissent, it is instructive to note that Furlong had actively supported Gudknecht's opponent, Democrat Janice DeVito, throughout her campaign and apparently also had a social relationship with her. See App. at 109a-10a, 153a