**Stella LEE, Plaintiff,**

v.

**Edward WOJNAROSKI and The City of Johnstown, Defendants.**

**Civ. A. No. 89–44J.**

United States District Court,
W.D. Pennsylvania.

April 13, 1990.

Memorandum Order Nov. 8, 1990.

Stanley M. Stein, Mark F. Haak, Pittsburgh, Pa., for plaintiff Stella Lee.

L. Edward Glass, Johnstown, Pa., for defendant Edward Wojnaroski.

Samuel F. Rizzo, Richard J. Green, Jr., Johnstown, Pa., for defendant City of Johnstown.

## MEMORANDUM

D. BROOKS SMITH, District Judge.

Plaintiff filed a six-count complaint on March 1, 1989, alleging that on December 31, 1987, defendant Edward Wojnaroski, the elected Controller for defendant City of Johnstown, terminated her from her position as Deputy Controller in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the federal constitution, the Pennsylvania constitution, Pennsylvania common law, and Pennsylvania's Local Agency Law, 2 Pa.C.S. § 105 *et seq.* Discovery is closed. Defendants have moved for summary judgment on the ADEA and Local Agency Act causes of action only.[1] For the reasons discussed below, their motion will be granted.

Plaintiff had been hired as Deputy Controller in 1974 by one of Controller Wojnaroski's predecessors; when Wojnaroski was elected in 1982, he retained her in the position. In the quadrennial city elections in 1987, Lee's husband ran unsuccessfully against Wojnaroski for the position of Controller for the term beginning Monday, January 4, 1988. After winning election to another term, Wojnaroski terminated Lee on December 31, 1987, the last business day of the year, apparently by telling her she would not be reappointed as Deputy Controller for the upcoming term. Lee was 64 at the time; her replacement was another employee of the Controller's office considerably younger than Lee.

■ The ADEA makes it unlawful for any employer to discharge an employee because of that employee's age, 29 U.S.C. § 623(a)(1), provided that the employee is at least 40 years old, 29 U.S.C. § 631(a), provided that the employer meets the jurisdictional requirements of 29 U.S.C. § 630(b), and provided that the employee is not an elected public official "or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office," unless that employee is subject to the applicable civil service laws of the state or subdivision. 29 U.S.C. § 630(f). The defendants

---

1. Although the motion for summary judgment is signed by Attorney Rizzo as "Counsel for Defendant City of Johnstown" it is styled "Defendants' Motion for Summary Judgment," and the brief in support thereof has been filed by Rizzo as "Attorney for Defendants." We treat the instant motion as filed on behalf of both defendants.

**60**

contend that Lee, as an appointed Deputy Controller, is both an "appointee on the policymaking level" and a member of the Controller's personal staff. Plaintiff, by affidavit, submits that she is not and has never been in a policymaking position.

The terms of the ADEA require examination of the statutory powers of the Deputy Controller to determine whether the post is a policymaking one. The performance or lack of performance by any given officeholder of policymaking functions is irrelevant to that determination. See e.g. *EEOC v. Reno*, 758 F.2d 581 (11th Cir.1985).

The City of Johnstown is a city of the third class, governed in pertinent part by the Third Class City Code, 53 P.S. § 35101 *et seq.* The office of Controller is governed by 53 P.S. §§ 36701–09, and particularly, with respect to the post of Deputy Controller:

> The city controller may appoint a deputy controller, who in case of the sickness, absence, or inability of such controller to act, *shall have the same powers and shall perform the same duties as are imposed by law upon the city controller.* In the case of such appointment, the said controller shall be responsible and liable for the acts of such deputy. 53 P.S. § 36708. (emphasis added).

The powers of the Controller for the City of Johnstown are set forth in 53 P.S. §§ 36704–08 and Section 502 of Ordinance No. 4310 (Administrative Code of the City of Johnstown) adopted by Johnstown pursuant to the optional Third Class City Charter Law, 53 P.S. § 41101, *et seq.*, Mayor–Council form of government. 53 P.S. §§ 41401, 41420. The powers granted to the Controller by Ordinance No. 4310 are supplementary to those granted by the Third Class City Code. 53 P.S. § 41301. These powers include the power to subpoena persons and records, to administer oaths and hire employees, to request information and examine all accounts in which the City is concerned as he deems it necessary, and to approve all payments by the City if satisfied that payment is in accordance with law. Plainly the role is one of substantial policymaking authority. Because the role of the Deputy Controller is potentially as great as that of the Controller, it is a policymaking post, and is exempted from coverage under the ADEA.

■ With respect to the claim that Lee's discharge violated Pennsylvania's Local Agency Law, *Jacoby v. Smith*, 107 Pa. Cmwlth. 397, 528 A.2d 1017 (1987) holds that the dismissal of an employee who does not possess a property right in a position does not constitute an "adjudication" for purposes of invoking the appeal provisions of the Local Agency Law. See 2 Pa.C.S. § 101. Plaintiff does not contend that she has a property right in her position, nor could she. See Pennsylvania Constitution, Article 6, Section 7.

Summary Judgment will be granted in favor of defendants on Counts 1 and 6. An appropriate order will be entered.

### MEMORANDUM ORDER

Plaintiff Stella Lee filed a six count complaint against the City of Johnstown and its elected Controller, Edward Wojnaroski, after Wojnaroski did not reappoint Lee as his Deputy Controller for the term of office beginning in January, 1988. Plaintiff alleged age discrimination because she had been replaced by someone younger than she, a civil rights violation because her discharge was in retaliation for her husband's attempt to unseat Wojnaroski in the controller's race, two counts of Pennsylvania common law wrongful discharge, intentional infliction of emotional distress, and a violation of Pennsylvania's local agency law. We previously dismissed counts one (age discrimination) and six (local agency law), and ordered the plaintiff to come forward with all the evidence which she contended supported a *prima facie* case of liability on the remaining counts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Plaintiff submitted, in response, her affidavit and that of her husband. Taken together, they aver the following:

1. In June, 1987, defendant Wojnaroski approached plaintiff Stella Lee and her husband, Edwin Lee, in the Controller's Office as the latter was dropping

her off for work and stated in effect that if Edwin Lee ran for the controller's position in the upcoming November, 1987 election, Stella Lee would be fired.

2. Also in June, 1987, Edwin Lee was approached by Thomas Apryle, one of Wojnaroski's acquaintances, and was told that Wojnaroski had stated that if Edwin Lee ran as an independent candidate against Wojnaroski, he would fire Stella Lee.

In response, the defendants submitted an affidavit from Apryle who denied ever making such a statement, and an affidavit from Wojnaroski denying making such statements either to Apryle or to the Lees. Accepting the plaintiff's affidavits as truthful (although we note the hearsay barrier to introducing through Edwin Lee what Wojnaroski allegedly said to Apryle), plaintiff fails to set forth sufficient evidence to sustain any cause of action.

■ We begin with count five, the intentional infliction of emotional distress claim. Despite hesitancy by the Pennsylvania Supreme Court to expressly adopt intentional infliction of emotional distress as a tort, *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987), the Third Circuit has directed federal trial courts that the tort should be assumed to exist. *Williams v. Guzzardi*, 875 F.2d 46, 50–52 (3d Cir.1989). *See also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 n. 7 (3d Cir.1990). Assuming that intentional infliction of emotional distress exists as a tort, plaintiff has failed utterly to show the "level of outrageousness" in Wojnaroski's conduct necessary to support an essential element of the cause of action. *See Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir.1988). Plaintiff's evidence shows that on one occasion approximately six months prior to Wojnaroski's action in not reappointing Stella Lee, Wojnaroski made a statement to Edwin Lee in an unexceptional tone of voice. If this constitutes outrageous conduct, we are hard-pressed to find conduct which does not.

■ Counts three and four allege wrongful discharge of an at-will employee. There are two species of wrongful discharge in Pennsylvania, and plaintiff pleads them both. The first, discharge in violation of a clear public policy, stems from *Geary v. United States Steel Corporation*, 456 Pa. 171, 184–85, 319 A.2d 174, 180 (1974):

It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened.

The second form of wrongful discharge, "specific intent to harm", appears to arise from the adoption by the Superior Court in *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 318–19 (1986) of certain language used by Judge Spaeth in *Yaindl v. Ingersoll Rand*, 281 Pa.Super. 560, 422 A.2d 611 (1980) in characterizing *Geary*, and of the construction of *Perks v. Firestone Tire and Rubber*, 611 F.2d 1363 (3d Cir.1979), by the Eastern District of Pennsylvania in *Jenkins v. United Steel Workers of America*, 522 F.Supp. 80, 85 (E.D.Pa.1981).

Despite our misgivings concerning the legal genesis and practical application of the specific intent to harm theory, *see*, *Neal v. Altoona Hospital*, 38 Pa.D. & C.3d 599 (C.P.Blair 1985), it is clear that the Pennsylvania Superior Court in 1986 adopted the doctrine, *see e.g.*, *Tourville v. Inter–Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263, allocatur denied, 514 Pa. 619, 521 A.2d 933 (1986); *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 577 (1986), and in the absence of guidance from the Pennsylvania Supreme Court, *see Paul v. Lankenau Hospital*, 520 Pa. 618, 554 A.2d 510 (1988), denying allocatur to 375 Pa.Super. 1, 543 A.2d 1148 (en banc), we look to the jurisprudence of the Superior Court as the best indication of the law of Pennsylvania. *See Vargus v. Pitman Manufacturing Co.*, 675 F.2d 73, 76 (3d Cir.1982).

Under either theory of wrongful discharge, however, plaintiff fails to present any evidence which would establish a *pri-*

*ma facie* case of liability. Plaintiff does not even attempt to present facts to support the claim that Wojnaroski intended to cause Lee "bodily and mental suffering", Complaint, ¶ 33, much less that Wojnaroski's action in not reappointing her at the beginning of the 1988 term was motivated by "disinterested malevolence" or accomplished by impropriety or viciousness. *Tourville v. Inter-Ocean Insurance Co.*, supra, 508 A.2d at 1265–66. To the extent that plaintiff's affidavits suggest any alleged motivation on the part of Wojnaroski, it is to consolidate his political base by not reappointing as his deputy the wife of his opponent in the November election. This is conduct which is neither malevolent nor demonstrative of an ulterior purpose, as the Pennsylvania courts have construed those terms. *See Paul v. Lankenau Hospital*, 375 Pa.Super. 1, 543 A.2d 1148, 1156 (1988). *Cf. Mudd v. Hoffman Homes for Youth*, 374 Pa.Super. 522, 543 A.2d 1092, 1096 (1988) (discharge to prevent vesting in pension states claim for specific intent to harm).

Nor does plaintiff's evidence establish a *prima facie* violation of a "clear mandate of public policy." *Geary v. United States Steel*, supra, 319 A.2d at 180. Pennsylvania's appellate courts have approved only two public policy exceptions since 1974: discharge for service on jury duty, *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978), and discharge from non-confidential public employment because of a pardoned criminal conviction, *Hunter v. Port Authority of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631 (1980). See *Paul v. Lankenau Hospital*, supra, 543 A.2d at 1155. Markedly absent from adoption or endorsement by the Pennsylvania Superior Court in *Paul v. Lankenau Hospital*, was the public policy exception suggested by Judge Adam's opinion in *Novosel v. Nationwide Insurance Co.*, 721

F.2d 894 (3d Cir.1983). *Novosel*, which predicted a broad expansion of Pennsylvania's common law protection of at-will employees, has proven not to be prescient of the direction taken in this area by the Pennsylvania courts. *Cf. id.*, 721 F.2d at 903 (statement of Judge Becker sur rehearing *en banc*, characterizing *Novosel* as an extremely broad exception to at-will employment which Pennsylvania courts would not create). In light of *Paul v. Lankenau's* admonition that Pennsylvania's at-will doctrine should not be dismembered by individual judicial notions of what constitutes the public weal, *id.*, 543 A.2d at 1157, we do not address the four-factor test enunciated by *Novosel*.[1]

We note, however, that if we were to apply *Novosel*, the third inquiry which *Novosel* directs—whether the speech, or in this context, political actions of an employee interfere with essential and close working relationships—would dictate judgment as a matter of law in favor of the defendants. To consider it a disputable question of fact whether Wojnaroski could legitimately believe that in a two·person office, Lee's husband's attempt to unseat Wojnaroski might interfere with the working relationship between him and Lee is at best naive. More importantly, to advance the proposition that there is a clear mandate of public policy which prevents an elected government official in Pennsylvania from allowing consideration of political loyalty to influence his hiring not only ignores historical facts, it is contemptuous of the democratic process itself.

Finally, in count two of the complaint, plaintiff Lee alleges that Wojnaroski's termination of her position as his deputy violates her civil rights under the First Amendment. Plaintiff's evidence, taken most favorably to her, would allow the inference that Wojnaroski did not reappoint

---

1. The factors to be applied by the trial court in evaluating a political wrongful discharge lawsuit are

 1. Whether, because of the speech, the employer is prevented from efficiently carrying out its responsibilities;

 2. Whether the speech impairs the employee's ability to carry out his own responsibilities;

 3. Whether the speech interferes with essential and close working relationships;

 4. Whether the manner, time and place in which the speech occurs interferes with business operations.

 *Id.*, 721 F.2d at 901, quoting *Sacks v. Commonwealth, Department of Public Welfare*, 502 Pa. 201, 216, 465 A.2d 981, 988 (1983).

Lee as his deputy controller in 1988 because Lee's husband Edwin Lee opposed Wojnaroski for the position of Controller in the November, 1987 election. It appears that Edwin Lee ran against Wojnaroski in the April, 1987 primary race, was unsuccessful, and then ran again as an independent in November, 1987. Answer of Wojnaroski, ¶ 21 Edwin Lee Affidavit. At the end of 1987, Wojnaroski informed Lee that she would not be reappointed as his deputy. *See* opinion of April 13, 1990, 59–60. We are not aware, and the record does not disclose, the political party affiliation of either Wojnaroski or Lee.

Despite the relevance to our decision of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Rutan v. Republican Party of Illinois,* 497 U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), this is not the paradigm partisan patronage hiring or firing case. This matter is more akin to the political speech cases, because plaintiff alleges that it is the fact of her husband's candidacy and not the substantive political differences between him and Wojnaroski that led to her replacement as Deputy Controller. We therefore also look to the line of precedent from *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) through *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) to *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). We must decide not only whether the position of the deputy controller is a policymaking office, and thus subject to politically motivated discharge, but also whether the office, even if not a policymaking position, is one the effectiveness of which might be impaired by the rival candidacy of Edwin Lee.

 Having ruled already that the Deputy Controller is a policymaking position for

purposes of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, 630(f), we hold consistently that the post is a policymaking one for purposes of the *Elrod–Branti–Rutan* doctrine as well. Plaintiff suggested at oral argument that policymaking need not have the same meaning in both areas of law, but aside from allowing plaintiff to achieve her desired result offered us no reason why we should multiply the meanings of the word policymaking.

Plaintiff also asserts that the possibility of Lee succeeding Wojnaroski as Controller is sufficiently small that her position as Deputy Controller cannot be considered to be a policymaking post, under *Furlong v. Gudknecht,* 808 F.2d 233, 237 (3d Cir.1986). *Furlong v. Gudknecht,* however, did not (and could not) overrule *Ness v. Marshall,* 660 F.2d 517, 522 (3d Cir.1981), or *Mummau v. Ranck,* 687 F.2d 9, 10 (3d Cir.1982) which held that an objective assessment of the legal scope of the position, rather than an *ad hoc* assessment of an employee's typical duties, determined whether the post was policymaking.[2]

*Furlong* is further distinguishable because the second deputy's position at issue in that case was several steps away from succeeding the Recorder of Deeds, an office which is much more technical and ministerial in its functions than that of a City Controller. By contrast, upon the absence of the Controller, *eo ipso,* the Deputy Controller becomes the Controller, with the full statutory powers of the Controller. We therefore hold that Wojnaroski could permissibly make employment decisions based solely on political support or affiliation.

 We also would hold, even if the office of Deputy Controller were not a policymaking position, that Wojnaroski could permissibly discharge Stella Lee because of Edwin Lee's opposition to Wojnaroski in the 1987 election. Even if we were to hold that Stella Lee's association with her husband's candidacy is a matter of pure public concern unmixed with personal ambition,

---

**2.** Nor did *Furlong* overrule *Horn v. Kean,* 796 F.2d 668 (3d Cir.1986) (en banc), which dictates

a narrow, not expansive reading of *Branti.*

its potential for undermining office relations, *Connick v. Myers,* 461 U.S. at 152, 103 S.Ct. at 1692–93, is so great that Wojnaroski's discharge of her would be permissible, even if motivated solely by political considerations. Under the balancing test mandated by *Rankin v. McPherson,* 483 U.S. at 388, 107 S.Ct. at 2899, no rational factfinder could conclude that Wojnaroski could not consider it a potentially disruptive force to have the wife of his political rival as his deputy in what is a two person (or during Lee's medical disability, a three person) office. We emphasize that it is not relevant to our decision whether Wojnaroski did find that the Controller's office was, in fact, disrupted, because that would be to make a legal question of the correctness of Wojnaroski's decision, rather than whether he could permissibly make that decision.

Although as a district court we are obligated to apply the decisions rendered by higher courts, and not to expand or contract them, we are constrained to request reexamination of this troubled field by the appellate courts. Our current jurisprudence not only allows expensive political guerilla warfare to be waged in the courts, see *Furlong,* 808 F.2d at 240 (Becker, J., dissenting), but also places in the hands of unelected and life-tenured federal officials the decision whether a state or municipality may fill a public office through the discipline of the democratic process, or must appeal to a federal judge or jury to make personnel changes. See *Rutan,* supra 497 U.S. at ——, 110 S.Ct. at 2746–47, 111 L.Ed.2d at 78 (constitutional rule against considering political activity or affiliation in personnel decisions to be enforced by federal judges who overwhelmingly owe their power to political patronage) (Scalia, J., dissenting); *see also Furlong,* 808 F.2d at 239 ("If a free election is to have any meaning in a democratic society, we must respect the political choices that are expressed by the voters.") (Becker, J., dissenting).

Summary judgment is entered in favor of the defendants on counts two through five.[3] The Clerk shall mark this matter closed.

Date: November 8, 1990.

---

3. In view of our decision, we do not address the question of defendant Wojnaroski's · qualified immunity under *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).