Lynette SCOTT and Arthur Scott, Plaintiffs,

v.

James H. SILLS, Jr., et al., Defendants.

No. Civ.A. 99–869 GMS.

United States District Court, D. Delaware.

Feb. 27, 2001.

Victor F. Battaglia, Jr., Victor F. Battaglia, Sr., Beth Deborah Savitz, Biggs & Battaglia, Wilmington, DE, for plaintiffs.

Cathy Ann Jenkins, Seth Jason Reidenberg, City of Wilmington Law Dept., Wilmington, DE, For Defendants.

### MEMORANDUM AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

The plaintiffs, Lynette and Arthur Scott, ("the Scotts") are a married couple who have sued James H. Sills, Jr. (the former mayor of Wilmington), the City of Wilmington, and the Wilmington Economic Development Corporation ("WEDCO") (collectively "the defendants") for violating their constitutional rights as well as several state laws under 42 U.S.C. § 1983. In brief, the Scotts claim that Mayor Sills refused to consider Lynette Scott for the position of Executive Director of WEDCO because her husband, who is a state representative, was critical of the Mayor's administration. According to the Scotts, this conduct infringed on their rights of free expression and association.

Presently before the court is the defendants' motion for summary judgment. The court will deny the defendants' motion because there are genuine issues of material fact to be resolved by a fact finder that preclude the court from ruling in the defendant's favor as a matter of law.

## II. STANDARD OF REVIEW

The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Boyle v. County of Allegheny, Pennsylvania*, 139 F.3d 386, 392 (3d Cir.1998). Thus, the court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Boyle*, 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the nonmoving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.; see also Assaf v. Fields*, 178 F.3d 170, 173–74 (3d Cir.1999).

With these standards in mind, the court will briefly describe the facts and procedural history that led to the motion presently before the court.

## II. BACKGROUND

### A. Relevant Facts

Lynette Scott ("Mrs. Scott") was employed by WEDCO from December of 1992 until January 26, 1999. From June of 1997 through December of 1998 and from June of 1998 until she left in January of 1999, she worked as the Acting Managing Director and Acting Executive Director of WEDCO, respectively. The Scotts claim that Mrs. Scott was never criticized for her performance during this time and in fact, members of the WEDCO Board of Directors have testified that she did a good job.

WEDCO is a private corporation, incorporated in the state of Delaware. It was established to promote the public welfare of the City of Wilmington. WEDCO provides loans to small businesses to encourage economic development in the City of Wilmington. The Scotts have alleged that WEDCO is a "quasi-governmental agency funded by the City of Wilmington." During all relevant times, James H. Sills

("Sills") was the mayor of the City of Wilmington.

According to WEDCO's bylaws, the Board of Directors has the sole authority to hire the Executive Director. The members of the WEDCO Board are appointed by and serve at the pleasure of the Mayor. On June 15, 1997, then WEDCO Executive Director, Ted Nutter resigned from his position. Mrs. Scott then applied for the position of Executive Director of WEDCO.

Following Mrs. Scott's application, she was required to submit to an interview with Mayor Sills. This interview took place on July 1, 1997. According to Mrs. Scott, during this interview, Sills asked her why she should be given the job since her husband did not support him in the 1996 election. Sills himself admits that during this interview he asked Scott, "Why would you want to work for an administration that you had been opposed to during the campaign?"

Mrs. Scott's husband, James Scott ("Mr. Scott"), had been critical of the Mayor during the previous election, claiming that he was engaging in a practice of reverse discrimination by removing high-ranking white employees from their positions in order to hire minorities. Mr. Scott also accused Mayor Sills of terminating employees who did not support his political campaigns. A number of these comments appeared in letters to the editor which were printed in the local papers. Mr. Scott also wrote several newspaper columns on the subject.

Mrs. Scott was not hired for the Executive Director position in 1997. Louise Eliason served in the position until 1998. After Eliason left the position, Mrs. Scott was selected to serve as the Acting Director of WEDCO. She again applied for the position of Executive Director. In early October, 1998, another letter written by Mr. Scott appeared in "The News Journal." Among other things, this letter criti-cized the Mayor's decision to re-vitalize the riverfront and downtown instead of investing in the City's neighborhoods. After reading this letter, Sills apparently met with one of WEDCO's board members to express his displeasure with Mr. Scott's lack of support. After this meeting, the board member apparently told Mrs. Scott that she would not be promoted to the position of executive director because her husband was not supporting the Mayor.

It appears to be undisputed that the Mayor expressed his displeasure at Mr. Scott's comments with at least one member of the WEDCO Board. In fact, one board member stated in his deposition that he told another member that Scott would not be hired as Executive Director "[b]ecause of the dispute with Lynette Scott's husband." Mrs. Scott was informed that she would not be promoted to the position of Executive Director because her husband was unsupportive of the Mayor. As a result of being told that she would not be considered for the executive director position, Mrs. Scott resigned from WEDCO.

In sharp contrast to the Scotts' version of events, the defendants have alleged that Mrs. Scott was not considered for the Executive Director position because she was not the most qualified candidate for the job.

## B. Procedural History

The Scotts filed this action on December 13, 1999. On January 18, 2000 the defendants filed a motion to dismiss. Because both the plaintiffs and the defendants filed papers outside of the pleadings in their briefing, the court considered the defendants' motion as one for summary judgment. On May 24, 2000, the court heard oral argument on the motion and denied the defendants' motion. As a result, the defendants filed an Answer to the complaint on June 23, 2000.

On August 23, 2000, the defendants filed another motion, which they identified as one for summary judgment. In response, the Scotts filed a motion to suspend briefing in order to permit discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. The defendants opposed this motion.

At an October 13, 2000 teleconference, the court ruled that the Scotts failed to satisfy the criteria for granting relief under Rule 56(f), however, the court granted the Scotts the opportunity to take discovery. At that same October 13th teleconference, the court pointed out that in their previously filed Motion to Dismiss, the defendants raised but failed to fully develop an issue that the court wanted addressed by the parties. The question posed by the court was:

> Whether the position of Executive Director of the WEDCO Corporation is one where an applicant's political affiliations or activities, including those of a spouse, are appropriate requirements or considerations for the effective performance of the office?

The parties completed briefing on this issue on February 5, 2001. The court heard argument on February 23, 2001.

With this factual and procedural background in mind, the court will address the substance of the defendants' motion for summary judgment.

## IV. DISCUSSION

■ Because the court directed the parties' attention to the issue of whether the Executive Director position is one where political affiliation is an appropriate requirement, the court will first address this issue.[1] In their amended summary judgment briefing, the defendants also maintain that they are entitled to qualified immunity, and therefore, summary judgment. The court will address this issue second.

### A. Whether the position of Executive Director of WEDCO is policymaking?

■ Having carefully considered the written submissions, the applicable principles of law, and the contentions of the parties made at the February 23, 2001 oral argument, the court finds that there are genuine issues of material fact concerning whether the position of Executive Director of WEDCO is policymaking.

The Supreme Court's decision in *Elrod v. Burns* set forth the general rule that a

1. In their August 23, 2000 motion for summary judgment, the defendants initially maintained that they were entitled to summary judgment because the evidence demonstrates that the Board considered and hired candidates who were more qualified than Mrs. Scott for the job. In support of this contention, the defendants cite to *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In *Mt. Healthy*, the Supreme Court held that an employer can defend a retaliatory discharge claim by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity. *Id.* at 287, 97 S.Ct. 568.

The court will not address this argument because it is clear that there are material factual issues concerning the reason that Scott did not receive the Executive Director position. In particular, the court notes that the defendants themselves, including Mayor Sills and members of the WEDCO Board, admit that Mr. Scott's criticism of Sills was a factor in their decision-making. Second, while Mrs. Scott served as Acting Executive Director, there is evidence that some Board members thought she was qualified for the position. Thus, the court could not grant the defendants judgment as a matter of law on this issue. *See Burns v. County of Cambria, Pennsylvania*, 971 F.2d 1015, 1025 (3d Cir. 1992) (explaining that material issues of fact remained on the issue of whether the defendants could justify the plaintiffs dismissal on other non-retaliatory grounds).

public employer cannot terminate public employees for political reasons because to do so would violate the First Amendment. 427 U.S. 347, 355, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). *Elrod* did, however, carve out an exception to this rule for those in "policymaking" positions "to insure that policies which the electorate has sanctioned are effectively implemented." *Id.* at 372, 96 S.Ct. 2673. Four years later, in *Branti v. Finkel,* the Court again recognized the *Elrod* exception and stated that "[i]n sum, the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

The Third Circuit first applied the *Elrod/Branti* exception in *Ness v. Marshall,* 660 F.2d 517 (3d Cir.1981). In *Ness,* the court noted that *Elrod* suggested that "employees who act as advisers, who formulate plans for implementing broad goals, or whose responsibilities are either not well defined or of broad scope are more likely to function as policymakers." *Id.* at 520.

The Third Circuit further refined the list of factors that indicate that a position falls within the *Elrod/Branti* test in *Brown v. Trench,* 787 F.2d 167, 169 (3d Cir.1986). In particular, *Brown* identified as relevant: "whether the employee participates in Council discussions or other meetings, whether the employee prepares budgets or has authority to hire or fire employees, the salary of the employee, and the employee's power to control others and to speak in the name of policymakers." *Id.* Finally, the *Brown* court stated that the "key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility but whether the employee has

meaningful input into decision-making concerning the nature and scope of a major [government] program." *Id.* at 169–70 (internal quotations omitted).

In 1991, the Third Circuit synthesized its case law regarding the *Elrod/Branti* exception in *Zold v. Township of Mantua,* 935 F.2d 633 (3d Cir.1991). In *Zold,* the court stated that:

> the ultimate inquiry ... is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance ·of the particular office involved.... [S]hould a difference in party affiliation be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office, dismissals for that reason would not offend the First Amendment. The burden of proof is on the defendant to demonstrate an overriding interest in order to validate an encroachment on an employee's First Amendment rights.

*Id.* at 635

■ All of these formulations focus on the nature of the position to determine if political affiliation is a requirement for the job. Finally, the question of whether an employee falls within the *Elrod/Branti* exception is one of fact. *See Boyle,* 139 F.3d at 397 (citing *Furlong v. Gudknecht,* 808 F.2d 233, 235 (3d Cir.1986)).

■ The WEDCO board possesses the ultimate authority to hire Scott for the position of Executive Director. This fact is uncontested. Third Circuit precedent, specifically *Rosenthal v. Rizzo,* 555 F.2d 390 (3d Cir.1977) and *Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386 (3d Cir.1998), make it clear that statements made by a hiring authority to the effect that political affiliation is not a proper requirement for a particular governmental position are indeed significant. According-

ly, statements by members of the WEDCO Board cannot be ignored by the court.[2] In its evaluation of the record before it, the court finds guidance in the Third Circuit's analysis in *Boyle:*

> While it is true that both the Supreme Court and this court have developed various formulations to be applied in political patronage cases in general, those cases did not involve statements made by the relevant hiring authority to the effect that a particular political affiliation was not an appropriate requirement for the particular position. While the ever evolving formulations developed by the Supreme Court and this court are to be applied in cases which present no conflicting testimony from members of the hiring authority, we believe that a rigid application of such tests under the circumstances of this case would render the relevant analysis overly formalistic and not consonant with the principles and rationales underlying the development of the law in the area of political patronage.

*Id.,* 139 F.3d at 394.

The record before the court in this case makes manifest that there are genuine issues of material fact as to whether the position of Executive Director of WEDCO is a policymaking position. The Scotts have adduced evidence in the form of deposition testimony which establishes that at least several members of the WEDCO Board do not believe that political affiliation is relevant to the selection of the Executive Director of WEDCO.[3] Moreover, in describing her job duties in a sworn affidavit, Constance Murphy, WEDCO's current Executive Director, has stated that: "I do not believe that political affiliation is a specific qualification for the position of Executive Director."

Viewing these facts in the light most favorable to the Scotts, as the court must, these statements demonstrate that WEDCO has not established as a matter of law that political affiliation is a requirement for the Executive Director position. On the other hand, in the same affidavit, Ms. Murphy also stated the following: "However, an Executive Director of WEDCO who is opposition to the policies and procedures of the Mayor and City of Wilmington will be unable to perform the duties of the job."

**2.** The defendants also claim that Lynette Scott has made contradictory statements that would indicate that the Executive Director position involves policymaking. The court notes that Scott is not a member of the hiring authority, and thus, her subjective beliefs aren't necessarily relevant to whether political affiliation is a requirement for the job. Still, Scott's statements further demonstrate that there are material factual issues for a jury to consider on the issue of whether the Executive Director position is policymaking.

The court also notes that in *Rosenthal,* which involved a discharged employee who claimed that his discharge violated the First Amendment, the court held that it was error for a district court to grant summary judgment when there was clear evidence that some members of the hiring authority did not consider the position at issue to be policymaking. *Id.* at 392–93.

**3.** Deposition testimony from WEDCO Board members, Joseph Williams, Waldron Giles, Gregory Williams, Harry Walker, Norman Oliver and Frederick Sears all state that political affiliation is not a requirement for the Executive Director position. The defendants argue that these statements by the WEDCO Board members reflect a misunderstanding on the part of the deponents in that they may have simply interpreted political affiliation to mean party identity. Thus, the defendants argue that these statements do not indicate that the Executive Director position is not one where political affiliation is a requirement. The defendants may be correct, however, the record before the court on this issue is at best inconclusive. The resolution of this dispute is, therefore, properly left for the jury.

In spite of this apparent equivocation, a reasonable fact finder could consider this evidence, as well as testimony like that of former board member Fred Sears,[4] and conclude that political affiliation is in fact a requirement for the position.

The defendants attempt to distinguish *Rosenthal* and *Boyle* from the present case by arguing that Scott, unlike the plaintiffs in those cases, had no actual property interest in the Executive Director position. The court is not persuaded by this argument, however, because at the time Scott was informed that she would not be considered for the Executive Director position because of "the dispute" with her husband, she was serving as Acting Executive Director. Thus, the defendants essentially failed to promote Scott to the position because of her husband's critical statements about the Mayor. *Assaf v. Fields,* makes it clear that any adverse employment action taken for political reasons will violate the constitution. *See id.,* 178 F.3d at 180.

As in *Rosenthal* and *Boyle,* the testimony by members of the WEDCO Board that political affiliation is not viewed by them as a requirement for the position of Executive Director demonstrates that there are genuine issues of material fact that should be determined by a jury in this case.[5]

**B. Whether the Defendants are Entitled to Qualified Immunity?**

 The defendants also maintain that they are entitled to qualified immunity and, therefore, summary judgment in this case. In *Harlow v. Fitzgerald,* the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In determining if the defendants are entitled to summary judgment, the court must first determine whether the Scotts' claims make out a violation of a constitutional right. *See Assaf v. Fields,* 178 F.3d 170, 173 (3d Cir.1999). Only if such a violation is alleged, will the court proceed to determine whether, in light of clearly established law, the unlawfulness of the defendants' actions would have been apparent to a reasonable official. *See Siegert v. Gilley,* 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In applying the doctrine of qualified immunity, the court must look to what a reasonable public official would have understood from existing law, and the Third Circuit does not require that there be a prior case on all fours on both the facts and the law. *Rodriguez v. Torres,* 60 F.Supp.2d 334, 350 (D.N.J.1999).

In this case, the Scotts have alleged that the defendants violated their first amendment rights to free speech and association when they chose not to hire Lynette Scott as Executive Director because of her husband's criticism of the Mayor. Thus, the Scotts have alleged a violation of a constitutional right. The Third Circuit in the case of *Assaf v. Fields,* has clearly and unequivocally established that an adverse employment action taken for political reasons contravenes the Constitution unless the position comes under the *Elrod/Branti*

---

**4.** Despite indicating that political affiliation was not an appropriate requirement for the position, Sears also made statements that would indicate that political affiliation would be an appropriate requirement for the job.

**5.** In light of the courts ruling on the question of whether the Executive Director's position is a policy making position, it need not reach the issue of whether WEDCO is a major government program. The court notes, however, that there are genuine issues of material fact in dispute on this question as well.

exception. *See id.* at 180 (citing *Burns v. County of Cambria*, 971 F.2d 1015, 1024 (1992)).

 Thus, the only remaining question is whether the defendants acted reasonably given established precedent. This is a question of law. *See Rappa v. Hollins*, 991 F.Supp. 367, 371 (1997). "However, if the conclusion as to whether a reasonable officer could have believed the conduct was lawful requires resolution of a genuine factual dispute over the nature of the conduct, the resolution of the dispute is left for the jury." *Id.* In this case, the court will not grant the defendants the cover of qualified immunity because there is a genuine factual dispute over the exact nature of their conduct that prevents it from ruling on this issue as a matter of law. In particular, it is not clear whether or to what extent the Mayor was involved in the decision not to hire Mrs. Scott. It is undisputed that the WEDCO Board is the sole hiring authority for the position of Executive Director of WEDCO. There is sufficient evidence in the record from which a jury could conclude that Mayor Sills' conduct was improper. Thus, the court cannot rule as a matter of law that the defendants' conduct was reasonable in light of clearly established law.

## V. CONCLUSION

Because the defendants cannot establish as a matter of law that the position of Executive Director of the Wilmington Economic Development Corporation is one where political affiliation is a requirement, because there are genuine issues of material fact to be determined by a fact finder concerning the circumstances that led to Mrs. Scott's resignation, and because there are genuine issues of material fact as to whether Mrs. Scott was qualified for the position, the court will deny the defendants' motion for summary judgment.

For these reasons, IT IS HEREBY ORDERED that:

1. The defendants' motion for summary judgment (D.I. 31, 68 and 71) is DENIED.