**Mary A. BART, Plaintiff-Appellant,**

v.

**William C. TELFORD, et al., Defendants-Appellees.**

**No. 81–1961.**

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1982.
Decided May 12, 1982.

Andrew J. Leahy, Springfield, Ill., for plaintiff-appellant.

Fredric Benson, Peter K. Woody, Springfield, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and GRANT,* Senior District Judge.

POSNER, Circuit Judge.

We are required to consider in this case questions relating to the First Amendment rights of public employees who run for public office.

Mary Ann Bart is an employee of the City of Springfield, Illinois. She works in the city's Department of Development and Programs, though we have not been told the nature of her work. The department is

* Of the Northern District of Indiana.

apparently under the direct supervision of the Mayor of Springfield. Miss Bart brought this suit under 42 U.S.C. § 1983 against the mayor and three of his subordinates, seeking actual and punitive damages for their alleged violations of her rights under the First Amendment, made applicable to the states by the due process clause of the Fourteenth Amendment. Her brief in this court also charges the defendants with having violated the equal protection clause of the Fourteenth Amendment; but there is no such allegation in the complaint, and since the case is before us on her appeal from the dismissal of the complaint for failure to state a claim upon which relief can be granted, see Fed.R.Civ.P. 12(b)(6), the equal protection claim is not properly before us.

The complaint contains two distinct allegations. The first is directed only at the mayor. Miss Bart alleges that when she told him she was going to run for mayor, he replied that she would have to take a leave of absence from her job with the city to do so. She complied, and now complains that in forcing her to take the leave of absence the mayor violated her First Amendment rights. The second allegation is that after she returned from the leave of absence, having lost the race, the mayor—who though not a candidate for re-election was still in office (apparently Miss Bart's candidacy aborted early in the campaign season) —orchestrated a campaign of petty harassments designed to punish her for having run for public office, and the other defendants participated in this campaign. The campaign included such things as baseless reprimands and "Holding her up to ridicule for bringing a birthday cake to the office on the occasion of the birthday of another employee although the practice was common and was especially favored in the case of supervisory personnel."

So far as the first allegation is concerned, that by forcing her to take a leave of absence the mayor infringed her First Amendment rights, the only right specifically alleged is the right to run for public office. The First Amendment does not in terms confer a right to run for public office, and

this court has held that it does not do so by implication either. *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977). It is true that political campaigns are important vehicles for the expression of ideas and opinions on public issues, notably by the candidates themselves, and therefore that restrictions on eligibility for public office could impair free speech. Nevertheless, this court held in *Newcomb* that a restriction on candidacy could not be presumed to have this effect; something more than the restriction had to be shown to bring the First Amendment into play. The complaint in *Newcomb* alleged that the plaintiff had been fired from his city job because his superiors opposed his candidacy for political reasons, and this allegation was held to raise a First Amendment issue. See *id.* at 829. There is no similar allegation here.

■ If contrary to what we have just said the Mayor of Springfield was required to justify forcing Miss Bart to take a leave of absence, we think he has justified it. Discipline is impossible to maintain when a subordinate is running for a position in which he would be the boss of his present superiors; so it is reasonable to ask him to take a leave of absence during the campaign. See *Magill v. Lynch*, 560 F.2d 22, 29 (1st Cir. 1977). It is true that no statute or regulation required the Mayor of Springfield to force Miss Bart to take a leave of absence, but that is of no consequence so long as there is no allegation—and there is none—that he singled her out because he did not like her views, and that he would have let another employee in her position continue on the job while running for mayor. On the pleadings, we must regard the restriction on her candidacy as neutral with regard to First Amendment values—"not aimed at particular parties, groups, or points of view," as the Supreme Court stated in upholding the Hatch Act's restrictions on political activities by federal employees. *Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973).

The plaintiff argues however that the reasons for requiring an employee of the City of Springfield to take a leave of absence during the campaign are matters of fact to be pleaded and proved by the mayor as an affirmative defense, and that her prima facie case is complete when she proves that being forced to take a leave of absence infringed her right of free speech. But we do not see the issue as one of fact even if we accept her premise (as we do not) that her First Amendment rights were prima facie infringed. The issue is whether a policy of compelling public employees to take a leave of absence if they want to run for public office is sufficiently important to the effective functioning of state (or, as here, city) government to justify the impairment of freedom of speech that may result if the policy discourages some public employees from running for office by making it more costly for them to do so. The balance is struck by the court's weighing general considerations rather than by its listening to witnesses. The impairment of free speech brought about by the leave-of-absence requirement is indirect and probably very slight; the benefits in preserving order, discipline, and efficiency in public employment strike us as much greater than the cost to First Amendment interests. No more is required to sustain the restriction.

We turn to the distinct allegation that after Miss Bart returned to work the mayor and the other defendants subjected her to a campaign of petty harassments in retaliation for her running for public office. Read very narrowly this part of the complaint would suffer from one of the fatal infirmities of the first part—there is no constitutional right to run for public office and hence retaliation for its exercise could not itself be actionable under section 1983. But this may be reading the complaint too narrowly. One of the specific acts of harassment alleged is "Reprimanding plaintiff for endorsing a candidate at a press conference following the primary election." A public endorsement of a candidate for public office is an expression of views that is within the protection of the First Amendment. Perhaps we can infer from this that the entire campaign of petty harassments was motivated not just by the fact of her running for office—since after all she did take a leave of absence as required—but by the views she espoused as a candidate. As noted earlier, there is no suggestion in the complaint that she was forced to take a leave of absence because of her views, as distinct from the fact of her candidacy; but there is a suggestion that the subsequent campaign of petty harassments was motivated by her views, and that is all that is necessary to save this part of the complaint from being dismissed under Rule 12(b)(6).

It is true that a certain air of the ridiculous hangs over the harassment allegations, in particular the allegation that we quoted earlier regarding the birthday cake. But we cannot say as a matter of law that the exercise of First Amendment rights by public employees cannot be deterred by subjecting employees who exercise them to harassment and ridicule through selective enforcement of work rules. See *Riechert v. Draud*, 511 F.Supp. 679, 683–84, 686–87 (E.D.Ky.1981). The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable. Yet even in the field of constitutional torts *de minimis non curat lex*. Section 1983 is a tort statute. A tort to be actionable requires injury. It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise—that if the Mayor of Springfield had frowned at Miss Bart for running for public office he would be liable for damages (unprovable, of course) under section 1983. See *Raymon v. Alvord Indep. Sch. Dist.*, 639 F.2d 257 (5th Cir. 1981); cf. *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 158 (5th Cir. 1980). However, more is alleged here—an entire campaign of harassment which though trivial in detail may have been substantial in gross. It is a question of fact whether the campaign reached the threshold of actionability under section 1983.

The judgment below is affirmed insofar as it dismisses the allegations of the complaint relating to the mayor's requiring the plaintiff to take a leave of absence from her city job. Otherwise it is reversed, and the case remanded for further proceedings—which we direct to be before a different district judge (see Circuit Rule 18)—consistent with this opinion.

SO ORDERED.