**Daniel D. RAPPA, Sr., Plaintiff,**

v.

**Penrose HOLLINS and Robert Weiner, individually, Defendants.**

No. Civ.A. 97–92 MMS.

United States District Court, D. Delaware.

Dec. 30, 1997.

Thomas S. Neuberger of Thomas S. Neuberger, P.A., Wilmington, DE, for plaintiff.

Kevin J. Connors of Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, DE, for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### Introduction

On February 28, 1997, plaintiff Daniel D. Rappa, Sr., filed a § 1983 civil rights claim against defendants Penrose Hollins and Robert Weiner in their individual capacity. Plaintiff alleges that defendants, members of the New Castle County Council, violated plaintiff's civil rights by making defamatory remarks [1] against him in retaliation for exercising his First Amendment [2] rights to free

---

1. The plaintiff has claimed damages "including but not limited to injury to his reputation." *Id.* at 5, ¶ 18. The court considers "defamatory remarks" an accurate description of the alleged retaliatory act because the claimed unconstitutional act consisted of allegedly "false and injurious statements," *id.* at 4, ¶ 15, which as their primary injury caused harm to the plaintiff's reputation. To the degree the alluded to additional injuries flowing from the reputational harm become relevant, the court will address them.

2. The First Amendment states: "Congress shall make no law ... abridging the freedom of speech, ... or the right of people peaceably ... to petition the Government for a redress of grievances." U.S. Const. amend. XIV.

The First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment. *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 749 n. 1, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (citing *Bigelow v. Virginia,*

speech and petition. Defendants filed a motion to dismiss on May 15, 1997, based on absolute immunity, qualified immunity, and plaintiff's failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1343(a)(3), civil rights jurisdiction. For the reasons which follow, defendants' motion will be granted based on qualified immunity.

## Statement of Facts

Plaintiff was a candidate in the September, 1990, Democratic primary for the United States Congressional seat for the State of Delaware, and expects to run for statewide office in future elections. D.I. 1 at 2, ¶ 4. At the time of this incident, defendants were either incumbent or newly elected New Castle County Councilmen. Id. at 2, ¶ 5.

In March of 1994, as a result of a lawsuit brought by plaintiff, the District Court for the District of Delaware invalidated the New Castle County election sign code and the State of Delaware sign code to the extent they unlawfully infringed upon political speech. D.I. 1 at 2, ¶ 6. As a result of this ruling and a lack of subsequent action on the part of relevant officials, election signs remained unregulated. Id. at 3, ¶¶ 7–8. In response to this problem, plaintiff "spoke[ ] with and petitioned both state and county government elected officials to enact reasonable . . . restrictions for election signs during political campaigns." Id. at 3, ¶ 11. As part of this ongoing effort, plaintiff spoke with both defendants at the New Castle County Office Building on November 12, 1996. Id. at 4, ¶ 13. Defendants are opposed to such legislation. Id. at 4, ¶ 14.

Subsequently, at the December 30, 1996, executive committee meeting of the New Castle County Council, which was open to the public and to the press, defendant Weiner said:

> 'The first time I walked in here, some guy I never met before named Danny Rappa came up and stuck his finger in my face and said I heard you said bad things about me—I'm going to come after you. And he did the same thing to Penrose Hollins.' Defendant Hollins then said, 'Bob just mentioned one that happened to me, I hadn't forgot about it but I wasn't going to mention it when someone points at me and says, if it was legal, you're a dead man.'

D.I. 1 at 4–5, ¶ 16. Plaintiff denies making such threats. D.I. 1 at 5, ¶ 17. Shortly after the meeting, the Wilmington News Journal reported on the incident as follows: "Weiner and Hollins said that Daniel D. Rappa, a Wilmington plumbing contractor and a former Democratic Party leader, made some threatening remarks to them while attending a meeting." Id. at 5–6, ¶ 19. The statements caused plaintiff to suffer damages "including but not limited to injury to his reputation." Id. at 5, ¶ 18.

## Standard of Review for Qualified Immunity[3]

■ In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions[4] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.[5] This standard balances the need to compensate individuals for the deprivation of their rights and

421 U.S. 809, 811, 95 S.Ct. 2222, 44 L.Ed.2d 600, (1975); *Schneider v. State of New Jersey,* 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 (1939)).

**3.** Because the Court will dismiss the case based on qualified immunity, the standard of review will focus on the immunity doctrine and not on the 12(b)(6) standard for a motion to dismiss.

**4.** The *Harlow* Court identified discretionary functions as those in which the surrounding judgments "almost inevitably are influenced by the

decisionmaker's experiences, values, and emotions." 457 U.S. at 816. *See also Winn v. Lynn,* 941 F.2d 236, 240 (3d Cir.1991) (stating that discretionary functions involve an element of choice or judgment and are based on considerations of public policy).

**5.** In *Wood v. Strickland,* 420 U.S. 308, 321–322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Court held that the doctrine of qualified immunity applies to local officials.

the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Id.* at 807.[6] As a result, the standard is supposed to allow officials "reasonably [to] anticipate when their conduct may give rise to liability...." *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).) Officials are not, however, "expected to anticipate subsequent legal developments." *Harlow*, 457 U.S. at 818.

■ Since *Harlow*, the Supreme Court has clarified the concept of a "clearly established" right. In *Anderson*, the Court commented that the

> contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

483 U.S. at 640.[7] If officials of "reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The Third Circuit Court of Appeals has explained the "clearly established" language requires "some but not precise factual correspondence and demand[s] officials apply general, well developed legal principles...." *Bennis v. Gable*, 823 F.2d 723, 733 (1987) (quoting *People of Three Mile Island v. Nuclear Reg. Comm'rs*, 747 F.2d 139, 144–145 (3d Cir.1984)). *See also Stoneking v. Bradford Area School District*, 882 F.2d 720, 726 (3d Cir.1989) (stating that the court inquires into "the general legal principles governing analogous factual situations, if any, and a subsequent determination whether the official should have related this established law to the instant situation") (quoting *Hicks v. Feeney*, 770 F.2d 375, 380 (3d Cir. 1985)).

Despite the factual correspondence usually necessary to clearly establish the contours of a right, the Supreme Court has stated that a "general constitutional rule already identified in the decisional law" may give fair warning to an official if the rule "appl[ies] with obvious clarity to the specific conduct in question," even though the specific issue has not previously been addressed. *U.S. v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997). Nevertheless, the *Lanier* Court did not undermine or question the *Anderson* Court's warning against describing the established or asserted constitutional right in overly general terms, thereby automatically converting any action which violates a constitutional right into an action which violates a clearly established right. *See Anderson*, 483 U.S. at 639.[8] *See also Penthouse International, Ltd. v. Meese*, 939 F.2d 1011, 1016–1017 (D.C.Cir.1991) (discussing *Anderson's* warning).

The Third Circuit Court of Appeals has decided the law may be clearly established even if the court has not ruled on the issue and if there is some disagreement among the

---

**6.** The holding in *Harlow* reflected the idea that government officials are entitled to some degree of immunity to avoid unacceptable interference with their duties and the burdens possibly associated with threats of liability. *See* 457 U.S. at 806.

**7.** The Third Circuit Court of Appeals has followed the *Anderson* standard. *See, e.g., Good v. Dauphin County Social Services*, 891 F.2d 1087, 1092 (3d Cir.1989) (stating that "in order for the governing law to be sufficiently well established for immunity to be denied, it is not necessary that there have been a previous precedent directly on point.... The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful").

**8.** In *Anderson*, the Supreme Court found the appellate court's construction of the asserted right too general. *See* 483 U.S. at 640. The appellate court had decided it was clearly established that the Fourth Amendment prohibited warrantless searches of a home absent probable cause and exigent circumstances. *See id.* The Court held the proper question was whether "it was not clearly established that *the circumstances with which Anderson was confronted* did not constitute probable cause and exigent circumstances." *Id.* at 641 (emphasis added).

circuits, as long as "no gaping divide has emerged in the jurisprudence" which would lead defendants "reasonably [to] expect" the courts in this circuit to rule other than one way. *Bieregu v. Reno,* 59 F.3d 1445, 1459 (3d Cir.1995). This is especially true if Supreme Court cases and relevant district court cases strongly indicate the asserted right is constitutionally protected. *See id.* at 1458–1459. *See also Pro v. Donatucci,* 81 F.3d 1283, 1292 (3d Cir.1996) (applying *Bieregu* and holding the law was clearly established despite a circuit split).

██ Whether the law was clearly established at the time of the incident is purely a legal question. *See Sharrar v. Dennis Felsing,* 128 F.3d 810 (3d Cir.1997); *Rogers v. Powell,* 120 F.3d 446, 455 (3d Cir.1997) (quoting *Acierno v. Cloutier,* 40 F.3d 597, 609 (3d Cir.1994)). In addition, it is a question of law whether the officials acted reasonably given established precedent. *See Sharrar,* at 815. However, if the conclusion as to whether a reasonable officer could have believed the conduct was lawful requires resolution of a genuine factual dispute over the nature of the conduct, the resolution of the dispute is left for the jury. *See Sharrar,* at 815; *Karnes v. Skrutski,* 62 F.3d 485, 491–492 (3d Cir.1995). *See also Johnson v. Jones,* 515 U.S. 304, 312–313, 319–320, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (holding that although the question of whether a given set of undisputed facts violates clearly established law is a question for the court and is appealable, the question of whether a genuine dispute exists as to facts affecting that determination is not appealable). It is the plaintiff's burden to establish the existence of a clearly established constitutional right. *See Davis,* 468 U.S. at 197.

### Discussion on Qualified Immunity[9]

#### A. *Discretionary Function*

██ As a threshold issue, the Court must ascertain whether defendants were engaging in a discretionary function when the alleged constitutional violation occurred. Although neither party addressed this issue in the

initial pleadings or briefs, at oral argument the parties disagreed generally over whether the allegedly defamatory statements were made during the performance of a discretionary function. Looking to the complaint, the only pleading relevant to this determination states:

> At an executive committee meeting of the New Castle County Council, which was open to the public and to the press, held on December 30, 1996, *suddenly and in the midst of a conversation on other unrelated matters* defendant Weiner said, 'The first time I walked in here, some guy I never met before named Danny Rappa came up and stuck his finger in my face and said I heard you said bad things about me—I'm going to come after you. And he did the same thing to Penrose Hollins.' Defendant Hollins then said, 'Bob just mentioned one that happened to me, I hadn't forgot about it but I wasn't going to mention it when someone points at me and says, if it was legal, you're a dead man.'

D.I. 1 at 5, ¶ 16 (emphasis added).

Given this information and the reasonable inferences that can be drawn from it, the substance of the comments was discretionary and the comments were spontaneously injected into a voluntary conversation. Even if the initial, unrelated conversation had been on the agenda (i.e., was a mandatory topic for the meeting), there is no basis for finding that each councilperson's input was not "influenced by [his or her] experiences, values, and emotions." *Harlow,* 457 U.S. at 816. Any set of facts consistent with this allegation supports a finding that the defendants' participation in the conversation and their unscripted comments involved an element of choice or judgment and were based on considerations of public policy. *Winn,* 941 F.2d at 240. Further, plaintiff has offered no evidence which would lead the Court to the opposite conclusion. As a result, defendants have passed the first hurdle in the qualified immunity defense.

---

9. Although the defense of qualified immunity is unavailable to a defendant being sued in his official capacity, such a defense is available to a defendant being sued in his personal capacity. *See Kentucky v. Graham,* 473 U.S. 159, 166–167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

## B. *Clearly Established Right*

■ The Court must now decide whether it was clearly established that plaintiff had a right not to be subjected to defamatory remarks in retaliation for engaging in a constitutionally protected First Amendment activity.[10] Defendants argue it was clearly established that such a right did not exist under § 1983. Relying on *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), which held that reputation is not a property interest protected by the Due Process Clause, and *Gini v. Las Vegas Metropolitan Police Department,* 40 F.3d 1041, 1045 (9th Cir.1994), which applied *Paul's* reasoning to the First Amendment retaliation context, the defendants contend actions causing only defamation can never serve as a basis for a cause of action under § 1983. Defendants argue such actions do not infringe upon a constitutional right; a more tangible interest than reputation must be infringed. Defendants alternatively argue that even if Rappa's asserted right exists, *Gini* demonstrates the right was not clearly established at the time of the incident giving rise to this lawsuit. Defendants further assert the alleged defamation does not preclude plaintiff from continuing to exercise his First Amendment rights.

Plaintiff first asserts that *Paul* requires an action infringing on a liberty or property interest in addition to reputational harm only within the framework of a due process case. Such a requirement is not applicable to First Amendment retaliation cases. Second, plaintiff relies on several First Amendment retaliation claims involving discharge or the refusal of tenure to demonstrate that the general proscription against adverse action in response to another's exercise of First Amendment rights was clearly established. Finally, plaintiff contends the defamatory remarks caused injuries beyond damage to his reputation; the complaint says the injuries included but were not limited to such harm. In order to analyze whether it was clearly established

on December 30, 1996, that defamatory comments constituted retaliation for purposes of a First Amendment claim, the Court will examine U.S. Supreme Court law and, if necessary, Third Circuit appellate and district court law, followed by other circuit courts' law.

### 1. *The Application of Paul to First Amendment Retaliation Cases*

■ As an initial matter, the Court rejects defendants' direct application of *Paul* to the First Amendment retaliation context. First, *Paul* repeatedly states that the infringement of a tangible interest, i.e., the alteration or extinction of a legal right or status, is a necessary addition to reputational harm in a *procedural due process* case because the plaintiff must establish some liberty or property interest has been deprived. *See* 424 U.S. at 701–712. The Court itself commented that its discussion was "limited to consideration of the procedural guarantees of the Due Process Clause...." *Id.* at 1165 n. 5.[11]

Second, the Supreme Court has explicitly held that the requirements under a procedural due process claim are distinct from those under a First Amendment retaliation claim. In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court addressed both First Amendment and due process claims relating to the non-renewal of a non-tenured professor's contract. Regarding the due process claim, the Court explained:

> [T]he Constitution does not require opportunity for a hearing before the nonrenewal of a nontenured teacher's contract, unless he can show that the decision not to rehire him somehow deprived him of an interest in 'liberty' or that he had a 'property' interest in continued employment, despite the lack of tenure or a formal contract.

*Id.* at 599 (relying on *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d

---

**10.** For purposes of the qualified immunity discussion, the Court will assume Rappa's speech and petition efforts were constitutionally protected.

**11.** In *Siegert v. Gilley,* 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Supreme Court held that defamation and the damages flowing from the reputational injury also do not constitute a liberty interest protected by the Due Process Clause.

548 (1972)). However, in discussing the First Amendment retaliation claim, the *Perry* Court stated:

> The first question presented is whether the respondent's lack of a contractual or tenure right to re-employment, taken alone, defeats his claim that the nonrenewal of his contract violated the First and Fourteenth Amendments. We hold that it does not.
>
> For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. [If such a denial were allowed,] ... his exercise of those freedoms would in effect be penalized and inhibited.

*Id.* at 597.

Several years later in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Court reiterated that a plaintiff's claims under the First and Fourteenth Amendments are not defeated by the lack of a property or liberty interest required by the Due Process Clause. *See id.* at 283. The Court elaborated:

> Even though [the plaintiff] could have been discharged for no reason whatever, and *had no constitutional right to a hearing prior to the decision not to rehire him, Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *he may*

nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

*Id.* at 283–284 (emphasis added).

More recently, in *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), the Supreme Court confirmed the distinctions between these two independent bases for invoking § 1983's protections. Presented with the dismissal of a probationary employee who could have been discharged for "any reason or for no reason," the Court still held that her employer could not terminate her for exercising her constitutional right to freedom of expression. *Id.* at 383–384. The *Rankin* Court relied on *Perry* and *Mt. Healthy* for this conclusion. *See id.* Similarly, in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (quoting *Perry,* 408 U.S. at 597), the Court held that although an employee has no entitlement to promotion, transfer, hire or rehire, an employer who makes these employment decisions based on political belief and association violates the First Amendment. *See id.* 497 U.S. at at 75, 79.

Finally, the Third Circuit Court of Appeals has recognized the Supreme Court has established a different standard for finding a First Amendment retaliation violation than for finding a due process violation.[12] In *Robb v. City of Philadelphia,* 733 F.2d 286 (3d Cir. 1984), the plaintiff claimed that private individuals, public officials, and the city had conspired to transfer him from one civil service position to another of less prestige and had

---

12. Other circuits have also recognized this difference in standards. *See, e.g., McGill v. Board of Education of Pekin Elementary School District,* 602 F.2d 774, 780 (7th Cir.1979). In *McGill,* the Seventh Circuit Court of Appeals addressed a retaliation claim based on a teacher's transfer from one school to another. *See id.* at 780. The court stated that the question was not, "as in a procedural due process case, whether plaintiff had a protected property interest in her position at any particular school. Clearly she did not." *Id.* Rather, the court emphasized the question was whether the defendants "unconstitutionally retaliated against the plaintiff on account of her

protected speech." *Id.* The Eleventh Circuit Court of Appeals has also clarified that an employee does "not need a protectable property interest, or any other state-created right, in order to maintain a First Amendment retaliatory discharge claim." *Beckwith v. City of Daytona Beach Shores, Florida,* 58 F.3d 1554, 1562 (11th Cir.1995). Relying on *Rankin, Mt. Healthy,* and *Perry,* the *Beckwith* court concluded that *"the right upon which a retaliatory government employment decision infringes is the right to free speech, not the right to a job." Id.* at 1562–1563 (emphasis added).

denied him a promotion in retaliation for his refusal to settle a private lawsuit, his union activity, and statements he made to the press. *See id.* at 290. In addressing the plaintiff's denial of due process and First Amendment claims, the Third Circuit Court of Appeals stated:

> The Supreme Court has made clear that a distinction exists between the entitlement to a benefit that gives rise to a property interest protected under the fourteenth amendment due process clause and a benefit that is protected under the first amendment. *Perry v. Sindermann,* 408 U.S. at 597, 92 S.Ct. at 2697. Those acting under color of state law may not deny a benefit to a person on a basis that infringes his constitutionally protected interest in freedom of speech, regardless of whether the person has a "right" to that benefit.

*Id.* at 295. Although the court dismissed the plaintiff's due process claim, it held the plaintiff had stated a valid First Amendment claim. *See id. See also Latessa v. New Jersey Racing Commission,* 113 F.3d 1313, 1319 (3d Cir.1997) (stating that "[u]nlike Fourteenth Amendment due process rights, appellant's First Amendment right to be free from retaliation for speech is not defeated by the lack of a property or liberty interest in his employment").

Following the Supreme Court and the Third Circuit Court of Appeals, this Court interprets the *Perry* case and its progeny as recognizing fundamental differences between a § 1983 claim grounded in the Due Process clause and one based on the First Amendment. Just as the purpose of these constitutional protections differs, so does the proof required to establish a violation of them.

Consequently, the Court declines to follow the Ninth Circuit Court of Appeals' application of *Paul's* holding to First Amendment retaliation claims. *See Gini,* 40 F.3d at 1045.[13]

### 2. First Amendment Retaliation Doctrine

The question remains, however, as to what rights were clearly established under the First Amendment retaliation doctrine on December 30, 1996, the time of the defendants' allegedly defamatory remarks. In order to prevail on a retaliation claim, the plaintiff has to prove: "first, that he engaged in a protected activity; second, that the Government ... responded with retaliation; and third that his protected activity was the cause of the Government's retaliation." *Anderson v. Davila,* 125 F.3d 148, 160 (3rd Cir.1997).[14] In evaluating the second criterion, which is the focus of the litigants' disagreement, the Court must determine "whether a reasonable [official] could have believed [the defamatory remarks] to be lawful, in light of clearly established law and the information" the officials possessed.[15] *Anderson,* 483 U.S. at 641. Stated another way, the inquiry must focus on whether it was apparent that such remarks were unlawful (i.e., constituted retaliation in violation of the First Amendment). *See id.* at 640. Although the cases discussed below inevitably address whether there was sufficient injury to establish a claim (i.e., a chill of First Amendment activities), the qualified immunity issue revolves around whether the alleged act causing the chill was clearly established as being unlawful.

---

**13.** Although *Gini* relies on *Patton v. County of Kings,* 857 F.2d 1379 (9th Cir.1988), *Patton* also summarily concludes that the plaintiff cannot, merely by raising a First Amendment argument, "avoid the constricture of *Paul v. Davis* ... that damage to reputation is not actionable under § 1983 unless it is accompanied by some more tangible interests." *Id.* at 1381.

**14.** The burden is on the plaintiff to show that his conduct was constitutionally protected. *See Mt. Healthy,* 429 U.S. at 287. In addition, in order to establish causality, the plaintiff must demonstrate the conduct was a "substantial" or "motivating" factor in the alleged retaliatory act. *Id.*

**15.** At oral argument, plaintiff asserted it was clearly established that any adverse action in response to the exercise of First Amendment rights is unlawful. Such a broad, abstract framing of the question would violate the teachings of *Anderson* and convert any retaliation-based violation of the First Amendment into a violation of a clearly established right. *Anderson,* 483 U.S. at 639. Merely because a plaintiff is able to establish a violation does not mean that a defendant should have anticipated liability for his actions. *Id.*

Beginning at one end of the spectrum, it is apparent that significantly adverse employment actions were clearly established as constituting retaliation if they were carried out in response to protected First Amendment activity. In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court held that both firing and threatening to fire a public employee for failing to provide political support to a given party is prohibited under the First Amendment. *See id.* at 359. The court explained that "the threat of dismissal for failure to provide that support unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise." *Id.* The Court commented that because the government may not achieve indirectly what it could not do directly, *id.*, the "inducement afforded by *placing conditions on a benefit* need not be particularly great in order to find that rights have been violated." *Id.* at 359 n. 13 (emphasis added). First Amendment rights are infringed "both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason." *Id.*

In *Rutan*, the Supreme Court took a step further when it decided whether rehiring, transferring, hiring, and promoting employees based on political affiliation constituted retaliation. 497 U.S. at 75, 79. Stating that someone cannot *"deny a benefit"* to a person on a basis that infringes his interest in free speech, *id.* at 72 (emphasis added), the Supreme Court concluded that although these "significant penalties" were not equivalent to dismissals, such actions still "pressur[ed] employees to discontinue the free exercise of their First Amendment rights." [16] *Rutan*, 497 U.S. at 79.

The Supreme Court has also found unconstitutional infringement of First Amendment rights in prohibitions on the receipt of honoraria, *United States v. National Treasury Employees Union*, 513 U.S. 454, 477–478, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995); denial of the use of public facilities, *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 396, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993); use of mandatory dues to finance political causes, *Keller v. Bar of California*, 496 U.S. 1, 15–16, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990); denial of government grants, *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 402, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984); denial of bar applications, *Baird v. State Bar of Arizona*, 401 U.S. 1, 8, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); unemployment benefits, *Sherbert v. Verner*, 374 U.S. 398, 403–404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); denial of tax exemptions, *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). However, the Supreme Court has most often found retaliation in cases in which the plaintiff's public employment has been denied in some way. *See, e.g., Umbehr*, 518 U.S. at 684, 116 S.Ct. at 2352 (failure to renew contract of independent contractor); [17] *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 2361, 135 L.Ed.2d 874 (1996) (same); *Rutan*, 497 U.S. at 75, 79 (failure to hire, retire, promote, or transfer); *Rankin*, 483 U.S. at 383–384 (discharge); *Branti v. Finkel*, 445 U.S. 507, 520, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (imminent discharge); *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 416–417, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (discharge); *Mt. Healthy*, 429 U.S. at 283–284 (failure to re-hire); *Elrod v. Burns*, 427 U.S. at 359 (discharged or threatened with discharge); *Perry*, 408 U.S. at 597 (failure to renew contract); *Pickering*, 391 U.S. at 574–575 (discharge); *Keyishian v. University of the State of New York*, 385 U.S. 589, 604, 87

---

16. "It is unnecessary here to consider whether not being hired is less burdensome than being discharged, because the government is not pressed to do either on the basis of political affiliation. The question in the patronage context is not which penalty is more acute but whether the government, without sufficient justification, is pressuring employees to discontinue the free exercise of their First Amendment rights." *Rutan*, 497 U.S. at 79.

17. The Court emphasized, however, that it was not addressing whether an independent contractor without a pre-existing commercial relationship with the government, i.e., a bidder, would have such a claim. 116 S.Ct. at 2352.

S.Ct. 675, 17 L.Ed.2d 629 (1967) (removal and refusal to hire).

■ Looking to the "contours" of the First Amendment right asserted in these cases, it was not clearly established by the Supreme Court that defamatory remarks constituted retaliation in violation of the First Amendment. *See Anderson,* 483 U.S. at 640. The above cases involved denials of or conditions on benefits which, in the cases involving public employees, usually took the form of adverse employment action. It is true that the burden of establishing retaliation is greater for public employees than for other citizens because of the government's interest in promoting the efficiency of public services. *See Waters v. Churchill,* 511 U.S. 661, 674, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (stating that the "constitutional review of government employment decisions must rest on different principles than review of speech restraints imposed by the government as sovereign"); [18] *accord United States v. National Treasury Employees Union,* 513 U.S. 454, 465–466, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). Nevertheless, some factual correspondence is required for a defendant to anticipate liability. *Anderson,* 483 U.S. at 640. The cases involving private citizens as well as those involving public employees only clearly established it was unconstitutional to remove a traditionally recognized governmental benefit (e.g., money, services, employment, licenses) in retaliation for the exercise of First Amendment expression. Although *Elrod* contained commentary indicating that the size of the benefit is immaterial, the Court did not abandon the premise that such a benefit must still be denied. 427 U.S. at 359, n. 13. Given this case law, a reasonable official in defendants' position could not have known that defamatory remarks in response to the plaintiff's speech and petition efforts would violate the plaintiff's First Amendment rights.

■ Although an established, general constitutional rule without strong factual correspondence may .be sufficient to preclude qualified immunity if the rule applies with "obvious clarity" to the situation at hand, *Lanier,* 520 U.S. at ——, 117 S.Ct. at 1227, such clarity is not presented in this case.[19] In order to hold it was clearly established that defamatory remarks constituted retaliation, this Court would have to violate the Supreme Court's admonition against construing the established right so broadly that all future acts determined to be violations would also be clearly established violations. *Anderson,* 483 U.S. at 639. The question is not whether it was clearly established that an adverse action which chills speech and is taken in response to protected speech violates the First Amendment. Rather, the inquiry is whether defamatory remarks were clearly established as constituting such adverse action.

Because of the relatively limited scope of Supreme Court cases on this issue, however, it is necessary to review how the Third Circuit Court of Appeals has applied these cases when determining what constitutes retaliation for purposes of the First Amendment. The Third Circuit Court of Appeals, although recognizing that most of the Supreme Court cases have dealt with action "adversely affecting an interest in employment," has interpreted these cases as finding the constitutional violation "not in the harshness of the sanction applied, but in the imposition of any *disciplinary action* for the exercise of permissible free speech." *Bennis v. Gable,* 823 F.2d 723, 731 (3d Cir.1987) (emphasis added). The court has alternatively stated the test as whether the government has *"den[ied] a benefit* to a person on a basis that infringes his constitutionally protected interest in freedom

---

**18.** Elaborating on this principle, the *Waters* Court stated:

The key to First Amendment analysis of government employment decisions, then, is this: The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer. The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing someone for the very

purpose of effectively achieving its goals, such restrictions may well be appropriate.
511 U.S. at 674.

**19.** The Supreme Court's example of a circumstance in which general constitutional rules alone apply with such obvious clarity that the unlawfulness of the act is clearly established, despite no similar case having been decided, is that of a welfare official selling foster children into slavery. 117 S.Ct. at 1227–1228.

of speech." *Robb*, 733 F.2d at 295 (emphasis added).[20]

Consistent with this understanding, the Third Circuit Court of Appeals has most often found retaliation based on actions denying employment or an employment benefit: *See, e.g., Latessa*, 113 F.3d at 1320–1322 (holding that plaintiff had provided substantial evidence that his nonreappointment as racing judge was in retaliation for his internal complaints and public testimony regarding others' alleged interference in the penalty proceedings so as to preclude summary judgment); *Azzaro v. County of Allegheny*, 110 F.3d 968, 981 (3d Cir.1997) (holding that a genuine factual dispute existed as to whether a sexual harassment complaint was the motivating factor in discharge decision and whether discharge would have occurred without complaint); *Pro v. Donatucci*, 81 F.3d at 1283, 1290 (3d Cir.1996) (denying defendant's motion for summary judgment and qualified immunity defense in a case in which the plaintiff's discharge was allegedly in retaliation for her testifying at a divorce proceeding in response to a subpoena); *Feldman v. Philadelphia Housing Authority*, 43 F.3d 823, 831 (3d Cir.1994) (affirming jury's finding of a First Amendment retaliation violation based on the plaintiff's discharge after he published reports exposing improprieties within his government agency); *San Filippo v. Bongiovanni*, 30 F.3d 424, 441–443 (3d Cir.1994) (holding that discharge in retaliation for filing a non-sham petition is unconstitutional, even if its content is not a matter of public concern, and remanding the case for a determination of whether plaintiff's activities constituted petitioning and, if so, whether such petitions were non-sham); *Burns v. County of Cambria*, 971 F.2d 1015, 1025 (3d Cir.1992) (holding it was clearly established that deputy sheriffs and a paramedic could not be dismissed from their jobs for failure to support another individual's candidacy for sheriff or for failure to work on his campaign); *Clark v. Township of Falls*, 890 F.2d 611, 622 (3d Cir.1989) (rejecting a First Amendment claim because there was insufficient evidence of government action but implying in dicta that the threat of firing alone might establish a retaliation claim); *Rode v. Dellarciprete*, 845 F.2d 1195, 1202 (3d Cir.1988) (holding plaintiff was unconstitutionally retaliated against when she was suspended for participating in interview with news reporter about her experiences with racial prejudice at her agency); *Bennis*, 823 F.2d at 732–733 (holding that plaintiff could pursue a retaliation claim based on a demotion allegedly resulting from plaintiff's filing of an employment discrimination suit and rejecting defendants' claim of qualified immunity)[21]; *Bartholomew v. Fischl*, 782 F.2d 1148, 1153 (3d Cir.1986) (holding that "retaliatory conduct including the issuance of public defamatory charges and the elimination of an employee's position" may establish a constitutional violation and may rise to the level of an official policy);[22] *Johnson v. Lincoln University of the Commonwealth Sys-*

---

**20.** More recently, the Third Circuit Court of Appeals stated that a plaintiff can establish a retaliation claim under the First Amendment if he was "denied a *benefit* simply because he exercised his First Amendment rights." *Anderson*, 125 F.3d 148, 162 (emphasis added). In *Anderson*, within a few days of learning of the plaintiff's lawsuit against them, the defendants had "commenced an extensive investigation of Anderson and Rohn [his attorney]. This investigation included visual surveillance of Anderson talking to his attorney, as well as photographs of both Anderson's home and Rohn's Jeep. In addition, ... National Crime Information Computer ("NCIC") checks [were done]." *Id.* at 149. The Third Circuit Appellate Court held the defendants had violated the plaintiff's First Amendment rights when they *"denied [the plaintiff] the benefit* of initiating litigation without the harassment of otherwise uncalled for surveillance...." *Id.* at 162 (emphasis added). Because *Anderson* was decided after the acts at

issue in this case occurred, however, *Anderson* may not serve as a basis on which plaintiff's rights could have been clearly established.

**21.** The *Bennis* court stated:

Clearly, if retaliatory discharges, transfers, letters of reprimand, and demotions accompanied by transfers were all illegal as of 1982, it cannot be said that under our standard retaliatory demotions by themselves were not also clearly illegal. Indeed, this must particularly be the case where, as here, the demotions involved cuts in pay and the equivalent of a verbal reprimand through statements made to the newspapers.

Id. at 733.

**22.** Although the retaliatory act in *Bartholomew* included defamatory charges, the court did not separate them out from the elimination of the job

*tem of Higher Education,* 776 F.2d at 443, 453 (3d Cir.1985) (denying summary judgment for defendants and remanding for a determination of whether certain communications regarding educational standards and academic policy were protected activity and precluded related discharge); *Robb,* 733 F.2d at 295 (holding that plaintiff's allegations that he was transferred to a less prestigious position and denied a promotion for refusing to settle a lawsuit, engaging in union activity, and making statements to the press were sufficient to state claim); *Holder v. City of Allentown,* 987 F.2d 188, 200 (3d Cir.1993) (holding plaintiff had stated a valid retaliation cause of action by alleging he was discharged in retaliation for writing a letter to the editor criticizing the residency requirement for city employees); *Czurlanis v. Albanese,* 721 F.2d 98, 107 (3d Cir.1983) (holding that plaintiff was unconstitutionally retaliated against when he was suspended for questioning, at a county board meeting, whether certain officials had engaged in wrongdoing or had breached the public trust).

However, a closer review of a couple of non-employment cases demonstrates that the Third Circuit Court of Appeals' concept of disciplinary action or denial of a benefit is broader than the majority of the cases indicate. In *Bradley v. Pittsburgh Board of Education,* 910 F.2d 1172 (3d Cir.1990), the plaintiff, a teacher, claimed she was harassed in retaliation for advocating certain teaching methods. *See id.* at 1176–1177. The harassment included engineering a physical assault by a parent of one of the students, refusing to reinstate the plaintiff after an illness, interfering in her relationship with the students, criticizing her in front of her students, falsely accusing her of using violence and abusive language, refusing her transfer requests, and forcing her to leave school one day. *See id.* at 1177–1178. The court did not address the significance or actionability of the individual retaliatory acts but rather discussed them as a group under the rubric of harassment. *See id.* at 1177–1178. The court held that even though the school was

permitted to forbid her use of certain teaching methods, the school could not engage in such harassment to limit her advocacy of these methods, or her criticism of school officials, outside of the classroom. *See id.* at 1176–1177.

Most on point for purposes of the case at bar is *Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate,* 519 F.2d 1335 (3d Cir.1975). In *Tate,* the plaintiffs were members of groups that regularly met to share political or social views which were anti-government or anti-police. *See id.* at 1336. The plaintiffs alleged the police attended these public meetings, collected information on the plaintiffs and took pictures of them, used this information to create police intelligence files, disseminated the information to non-law enforcement personnel, and disclosed the information on nationwide television. *See id.* at 1336–1337. The court held that the mere presence and information gathering activities of police at the meetings did not raise a constitutional problem. *See id.* at 1337–1338. In addition, using the information to compile police records and sharing the materials with other law enforcement personnel on the basis of a legitimate law enforcement function was lawful. *See id.* at 1338.

Nonetheless, the appellate court held that the dissemination of such materials to non-law enforcement individuals, agencies, or organizations and the disclosure of the information on nationwide television were actions on which a claim could be established. *See id.* at 1338–1339. The court concluded these activities presented an "immediately threatened injury" of chilling the plaintiffs' speech and associational privacy rights. *Id.* at 1338. The general availability of the information could lead to "immediately threatened harm[s]," such as interference with job opportunities, careers, or travel rights, thereby dissuading people from becoming or remaining members of such groups. *Id.* The court stated that even though the above harms were not "concrete" and it would be difficult

when in decided that such actions could, combined, establish a violation of the First Amend-

ment. 782 F.2d at 1153.

to obtain "tangible evidence" of them, they were "strikingly apparent." *Id.* at 1339.

In light of these cases, this Court believes that the Third Circuit Court of Appeals has demonstrated it construes "disciplinary action" or "denial of a benefit" more broadly than what had been clearly established by the Supreme Court. Nevertheless, these cases do not equate with a clearly established right to be free from defamatory remarks in retaliation for the exercise of First Amendment rights. It does appear that based on the above decisions Rappa could argue the defamatory remarks constitute retaliation and establish a First Amendment violation; however, these cases do not clearly establish such a right. Although precise factual correspondence between precedent and the presenting case is not required, some factual correspondence is. *See Bennis,* 823 F.2d at 733. Especially in light of *Anderson's* warning against construing established rights too generally, a reasonable official in defendants' position was not presented with a degree of factual correspondence that would have enabled him "reasonably [to] anticipate . . . liability." *Anderson,* 483 U.S. at 646. Of course, the lack of sufficient clarity in this circuit does not preclude the clear establishment of the right when relevant district court cases and other appellate courts' decisions are considered. *Bieregu,* 59 F.3d at 1458–1459.

The Court has found only two district court cases in the Third Circuit that provide guidance beyond the Third Circuit Court of Appeals cases on whether it was clearly established plaintiff could state a retaliation claim based on defamatory remarks. In *Weisser v. Medical Care Systems, Inc.,* 432 F.Supp. 1292 (E.D.Pa.1977), the Eastern District for the District Court of Pennsylvania held, prior to but consistent with *Gini,* that the plaintiff could not establish a First Amendment retaliation claim based on defamatory statements. *See id.* at 1295. The

plaintiff had alleged the defendant instituted a lawsuit against the plaintiff without reasonable cause and with malice, resulting in injury to reputation, mental suffering, humiliation, and other injuries and damages. *See id.* at 1294. The plaintiff also alleged the lawsuit was initiated for the sole purpose of intimidating plaintiff so she would not speak out on issues of public concern. *See id.* at 1293. In rejecting plaintiff's claim, the court stated that § 1983 does not give rise to a cause of action for defamation since defamation involves no infringement of a constitutional right. *See id.*

More recently, however, the same district court possibly implied by silence that defamation may establish a cause of action under a First Amendment retaliation claim. In *Mraz v. County of Lehigh,* 862 F.Supp. 1344 (E.D.Pa.1994), the court confronted an allegation that defendants retaliated against plaintiff by issuing "false and defamatory statements concerning [plaintiff's] competence and personal honesty." *Id.* at 1349. The court granted summary judgment to defendants, reasoning that the plaintiff had not established a connection between the alleged statements and any violation of his rights to free speech. *See id.* Although caution is important when meaning is inferred from another court's silence, the *Mraz* court's attention to causality could reasonably be interpreted as an acceptance of defamation as a form of retaliation. Taken together, these two cases at best rendered murky the viability of a First Amendment retaliation claim based on defamatory comments. Further, it would take a judge or lawyer knowledgeable in First Amendment constitutional law to tease a principle of law out of the *Mraz* court's silence.

In reviewing cases in other circuits, the Court has only looked to cases that would most likely help determine whether defamatory remarks clearly constituted retaliation.[23]

---

23. Although appellate courts have also found First Amendment retaliation most often in employee dismissal cases, many courts have found such retaliation in factual patterns more diverse than those addressed by the Supreme Court. *See, Anderson,* at 162 (listing *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32,

40–41 (1st Cir.1992) (denial of residential site permits); *Newsom v. Norris,* 888 F.2d 371 (6th Cir.1989) (failure to reappoint prisoners as inmate advisors); *Soranno's Gasco, [Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989)] (suspension of petroleum permits); *Harrison [v. Springdale Water & Sewer Comm'n,* 780 F.2d

In *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the Seventh Circuit Court of Appeals addressed a claim of harassment in retaliation for the plaintiff having run for public office. *See id.* at 624. The harassment included but was not limited to "baseless reprimands and holding her up to ridicule for bringing a birthday cake to the office" even though the practice was usually favored. *Id.* at 625 (internal quotations omitted). Although the court concluded "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable ..." and the harassment at issue might have been "trivial in detail," the entire campaign of harassment may have been "substantial in gross."[24] *Id.* As a result, the court remanded the case in order for the jury to hear whether the harassment "reached the threshold of actionability." *Id.*

The standard established by *Bart* was articulated in *Pieczynski v. Duffy*, 875 F.2d 1331 (7th Cir.1989), in which the court held that a campaign of harassment calculated to "humiliate [the plaintiff,] drive her to resign, even break her health, in punishment" for her political association with a hated individual violated the First Amendment. *Id.* at 1335. Relying on *Bart*, the court rejected a qualified immunity defense and concluded it had been clearly established that *"false accusations and petty humiliations, if orchestrated into a campaign of political retaliation, are actionable."* *Id.* at 1336 (emphasis added).[25]

Nevertheless, the scope of the harassment case law was not considered broad enough to reject a qualified immunity defense in *Wal-*

lace v. Benware, 67 F.3d 655 (7th Cir.1995). In *Wallace*, the plaintiff was a deputy sheriff who had announced his candidacy for sheriff. *See id.* at 656. Subsequent to this announcement, the sheriff engaged in a campaign of harassment against Wallace. *See id.* at 656–658. Although the court concluded that such actions supported a First Amendment retaliation claim, the majority of the court granted qualified immunity to the sheriff. *See id.* at 663. The court reasoned that because of the relative similarity between Wallace's situation and circumstances in which sheriffs have been allowed to fire officers in policymaking positions based on political considerations in order to ensure the efficient and effective operation of the department, it was not clearly established that harassing such an officer would be unlawful. *See id.* at 660–663. The dissenting judge on the issue of qualified immunity argued that the line of harassment cases did clearly establish such harassment was unlawful and that the policy-based termination line of cases did not apply. *See id.* at 663–664.

The Seventh Circuit Court of Appeals again dealt with the limitations of established First Amendment retaliation law in *Dahm v. Flynn*, 60 F.3d 253 (7th Cir.1994). In *Dahm*, the employer had altered the plaintiff's job responsibilities such that the position was "de-skill[ed]." *Id.* at 255. The court defined the threshold question as whether the changes in job responsibilities constituted a "materially adverse change in the terms and conditions of employment...." *Id.* at 257 (internal quotations omitted).[26] The court held a "dramatic downward shift in skill level required to perform job responsibilities can

---

1422, 1428 (8th Cir.1986) ] (filing of a frivolous condemnation counterclaim against landowners); *Packish v. McMurtrie*, 697 F.2d 23, 26 (1st Cir.1983) (denial of firefighter's indemnification request); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979) (transfer of prisoner to another prison)).

**24.** Interestingly, the Supreme Court in *Rutan* seemed to approve of this holding:

> Moreover, the First Amendment, as the [Seventh Circuit Court of Appeals] noted, already protects state employees not only from patronage dismissals but also from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when

intended to punish her for exercising her free speech rights.' 868 F.2d at 954, n. 4.
497 U.S. at 75, n. 8.

**25.** *See also Walsh v. Ward*, 991 F.2d 1344, 1345 (7th Cir.1993) (stating that "a campaign of petty harassment may achieve the same effect as an explicit punishment").

**26.** In a more recent case the Seventh Circuit Court of Appeals reiterated that even though "retaliation need not be monstrous to be actionable under the First Amendment," the plaintiff must show "some action with materially adverse consequences." *DeGuiseppe v.. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir.1995) (emphasis added).

rise to the level of an adverse employment action, even if the time required to perform the duties remains constant." *Id.* Nevertheless, because prior cases "hint[ing] that gutting central job functions may constitute an adverse action ... [had] addressed quantitative rather than qualitative reductions in responsibilities," the court granted qualified immunity. *Id.* at 258.

The Tenth Circuit Court of Appeals appears to be the only circuit court other than the Third Circuit Court of Appeals that has addressed whether surveillance constitutes retaliation. In *Riggs, III v. City of Albuquerque*, 916 F.2d 582 (10th Cir.1990), the court held the plaintiffs' claim of chilled speech and alleged injury to personal, political and professional reputations resulting from governmental surveillance was sufficient to establish standing. *See id.* at 585–586. The court focused largely on the fact that the plaintiffs were actual targets of the illegal investigation. *See id.* at 585.

The Court of Appeals for the District of Columbia, however, has rendered a decision arguing against the idea that defamatory remarks constitute retaliation. In *Penthouse,* the appellate court granted qualified immunity to the government, which had tried to convince a distributor not to sell Penthouse by threatening to characterize the publications pejoratively.[27] *See* 939 F.2d at 1016. *Even if the government* "deliberately set out to ... embarrass or intimidate all Penthouse's distributors to bring about a substantial reduction of the magazine's circulations," the court could not see how Penthouse could recover damages as long as the officials "took no covert, disruptive action, but identified themselves and their speech." [28] *Id.* at 1017.

Relying on the *Anderson* Court's warning against construing rights too generally for purposes of qualified immunity, the court declined to read its holdings in prior cases or Penthouse's asserted right broadly enough to defeat immunity. *See id.* at 1016–1017. The court explained that regardless of whether the government intended to interfere with Penthouse's speech, the proper question was whether it was clearly established the magazine enjoyed a right "to be free from governmental criticism that would discourage the distribution of its magazine." *Id.* at 1017. The court held there was no clearly established right to be free of "such deliberate and calculated pressure if no threats of legal sanctions were employed." [29] *Id.* at 1017. Of additional importance, the court noted that *the truth or falsity of the statements by the government was not a basis for claiming a constitutional tort. See id.* Although one reason for this conclusion was the difficulty of assessing the veracity of the statements at issue, the court also doubted "that a constitutional line could or should be drawn between 'true' government speech that impacts on the publications or speech of private citizens and 'false' government speech of that character." *Id.*

When all is said and done, it is necessary to return to the Ninth Circuit Court of Appeals' *Gini* opinion, which appears to be the only circuit court case presenting a factual scenario closely aligned with that presented by Rappa. In *Gini,* a police officer defamed a court clerk, who consequently lost her job. *See* 40 F.3d at 1043–1044. The Court found that, although the defamation led to the dismissal, the officer was not the one to terminate Gini and could not reasonably have known that such a dismissal would result. *See id.* at 1044. Therefore, the court con-

---

**27.** The court acknowledged it had previously held that an extensive scheme developed by the FBI to disrupt political activities of certain disfavored groups violated their First Amendment rights. 939 F.2d at 1016. However, the court distinguished the prior case as involving agents acting "surreptitiously and in disguise to publish pamphlets making false allegations about persons in target organizations." *Id.*

**28.** The court declined to decide whether such action could ever violate the First Amendment. 939 F.2d at 1016.

**29.** *See also Block v. Meese, III,* 793 F.2d 1303, 1312 (D.C.Cir.1986) (holding that even if the government's classification of various documentary films as "propaganda" constituted official government disapproval of the films and was detrimental, "neither precedent nor reason would justify ... finding such an expression itself unlawful").

cluded Gini was left with only a defamation claim. *See id.* at 1044–1045. In rejecting this remaining claim, the court held that "defamation and damage flowing from it" could not establish a cause of action under § 1983. *Id.* at 1045. The *Gini* court went on to state the government may not deny a person a "valuable privilege or benefit on a basis that infringes her constitutionally protected interests" but defamation does not affect the "rights, benefits, relationship or status with the state." *Id.* Relying on *Paul,* the court required that defamation be accompanied by " 'some more tangible interest' " in order to be actionable under § 1983. *Id.*

It is against this background the Court must decide if plaintiff's asserted right not to be subjected to defamatory remarks in response to his exercising First Amendment rights was clearly established. The Court holds that it was not. Some of the discussed cases expansively interpret the retaliation doctrine to include relatively minor adverse actions, *Bart,* 677 F.2d at 624, or situations in which no tangible benefit or privilege was denied, *Riggs, III,* 916 F.2d at 586. Nonetheless, a recurrent theme is that there needs to be a level of clarity among the legal principles and a degree of correspondence among the facts such that the unlawfulness of the act was apparent. *See Anderson,* 483 U.S. at 640; *Bennis,* 823 F.2d at 733. Although the Seventh Circuit Court of Appeals' harassment cases and Tenth Circuit Court of Appeals' surveillance case may support an argument that defamatory remarks constitute retaliation, these cases do not clearly establish this proposition. Moreover, in terms of general legal principles, the Seventh Circuit Court of Appeals' cases and the District of Columbia Court of Appeals' case demonstrate that the required materiality of the retaliatory act is murky. Finally, the more recent and most on point Ninth Circuit

Court of Appeals decision directly opposes such an application of § 1983, *Gini,* 40 F.3d at 1045, and the District of Columbia Court of Appeals discussion seriously challenges it. *Penthouse,* 939 F.2d at 1016–1017. Given such a legal background, officials of "reasonable competence could [have] disagree[d]" as to whether the defendants' alleged acts constituted retaliation. *Malley,* 475 U.S. at 341.

▮ Plaintiff attempts to distinguish his case from that at issue in *Gini* by stating that *Gini* only discussed defamatory remarks whose injury was reputational harm, while plaintiff alleges the defendants' defamatory remarks caused injuries "including but not limited to" reputational harm. D.I. 1 at 5, ¶ 18. However, the plaintiff's argument contains a critical flaw. Qualified immunity is not premised on the idea that defendants are expected to anticipate the *harm* resulting from their actions. Rather, they are liable for the *actions* that they knew or should have known were unlawful. Therefore, although minor distinctions between the harm suffered by Gini and that sustained by Rappa may affect the actionability of the claim, they do not constitute the basis for finding or rejecting qualified immunity.[30]

Although this Court believes *Gini's* analysis is flawed in that it applied Due Process clause reasoning to a First Amendment case, defendants are neither constitutional lawyers nor federal judges. A reasonable official in the defendants' position could have well believed based on the recent *Gini* holding that defamatory remarks in response to protected activity were not violative of the First Amendment, especially given that *Gini* was the only case to address the issue specifically.

It is true the Third Circuit Court of Appeals has found rights clearly established despite disagreement among the circuits.

---

30. Even if the Court were to look to *Gini* to assess the actionability of Rappa's claim, Rappa's argument fails. In his brief, Rappa provides examples of the injuries that could be reasonably inferred from the defamatory remarks. He asserts he suffered "emotional distress, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain and anguish, humiliation, embarrassment, harm to his name recognition and to his favora-

bility polling figures, as well as harm to his reputation." D.I. 16 at 19. However, all of these alleged harms flow from the harm to his reputation (i.e., from the defamation). *Gini* specifically holds that "defamation and damage flowing from it"—including the loss of a job—are insufficient to state a claim under § 1983. 40 F.3d at 1045. As a result, under *Gini,* Rappa's claim would not be actionable.

*See Bieregu,* 59 F.3d at 1459; *Pro,* 81 F.3d at 1292. However, the appellate court's minimization of the disagreement was based on the lack of a "gaping divide ... in the jurisprudence" which would lead the defendants to "reasonably expect" the court to come out any way but one. *Bieregu,* 59 F.3d at 1459. Even if opinions like those of the Seventh and Tenth Circuit Courts of Appeals were construed as clearly establishing Rappa's asserted right, the Ninth Circuit Court of Appeals' *Gini* case would certainly create such a gaping divide.

 Although a judge might be able to infer that the Third Circuit Court of Appeals would reject *Gini,* a reasonable official would expect otherwise, especially given that a district court within this circuit, although predating *Gini,* has held consistently with *Gini.* "Governmental employees must obey the law in force at the time but need not predict its evolution, need not know that in the fight between broad and narrow readings of a precedent the broad reading will become ascendant." *Walsh,* 991 F.2d at 1346 (citing *Greenberg v. Kmetko,* 922 F.2d 382, 385 (7th Cir.1991)). Further, unlike in *Bieregu,* the defendants have an argument not only that "the constitutional magnitude of their actions was murky" but also that the "illegality of their behavior was [not] manifest." *Bieregu,* 59 F.3d at 1458.

## CONCLUSION

At the time of the defendants' defamatory comments, it was not clearly established that Rappa had a constitutional right not to be subjected to defamatory remarks in retaliation for engaging in constitutionally protected First Amendment activity. Although Rappa argues that any adverse action in response to protected First Amendment activity was clearly established as unconstitutional, acceptance of this framework would directly contradict *Anderson's* mandate against construing the rights so broadly that qualified immunity becomes meaningless. That being so, and given the incomplete record and the primarily subjective nature of the injuries as set forth in the complaint, it would be inappropriate for this Court to memorialize its thoughts on whether retaliatory

defamatory remarks constitute a violation of the First Amendment. Defendants' motion to dismiss on the grounds of qualified immunity will be granted. Because this holding obviates the need to decide the remaining issues, the Court also declines to address whether absolute immunity would have barred the suit.